UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA
------------------------------------------------------------------x
PHILLIPS-VAN HEUSEN CORP.,
                        Plaintiff,
  - against -

J.V.E. CO., INC.,
                        Defendant,
  - and -

MITSUI O.S.K. LINES LTD.;
DAMPSKIBSSELSKABET AF 1912
AKTIESELSKAB and AKTIESELSKABET
DAMPSKIBSSELSKABET SVENDBORG,
             Defendants/Third Party Plaintiffs,

  - against -

KELLAWAY TRANSPORTATION, INC.;
KELLAWAY INTERMODAL & DISTRIBUTION
SYSTEMS, KELLAWAY INTERMODAL
SERVICES, INC. and KELLAWAY TERMINAL
SERVICES, INC.,
             Third Party Defendants.
------------------------------------------------------------------x

Civil Action No.: 1: CV-00-0665
(Hon. Sylvia H. Rambo)

FILED
HARRISBURG, PA
FEB 12 2002
____ D'ANDREA, CLERK
Per _____

## DAADS' (t/a MAERSK LINE) AMENDED

## PROPOSED FINDING OF FACT AND CONCLUSIONS OF LAW

    Defendant and Third Party Plaintiff Dampskibsselskabet AF 1912 Aktieselskab and Aktieselskabet Dampskibsselskabet Svendborg t/a "Maersk Line," by and through its attorneys,

PBH: 145518.1

Palmer Biezup & Henderson LLP, hereby submits the following Proposed Findings of Fact and Conclusions of Law:

**Proposed Findings of Fact**

1.  Plaintiff Phillips-Van Heusen Corp. (hereinafter "Plaintiff" or "PVH") contracted with Dampskibsselskabet AF 1912 Aktieselskab and Aktieselskabet Dampskibsselskabet Svendborg t/a "Maersk Line" (hereinafter "Maersk Line") for the transportation of ocean shipping container No. GSTU 2848676 from Karachi, Pakistan to the discharge port of Newark, New Jersey to the P.V.H. facility in Reading, Pennsylvania.

2.  In connection with the shipment, Maersk Line issued its Bill of Lading No. MAEU-YCG-J-05408, which governs the rights and obligations between Maersk Line and Plaintiff. (Maersk Line Exs. "A" and "B").

3.  The closed and sealed ocean shipping container No. GSTU 2848676 was loaded aboard the M/V FRANCISCA SCHULTE in Karachi, Pakistan with Seal No. 01100356 intact.

4.  At no time did Maersk Line view or inspect the contents of ocean shipping container No. GSTU 2848676.

5.  Maersk Line transported ocean shipping container No. GSTU 2848676 by ocean-going vessel from Karachi, Pakistan to the Sealand Terminal in the Port of Newark, New Jersey where the container was discharged on or about June 15, 1999.

6. On June 15, 1999 Maersk Line issued a delivery order to Kellaway Transportation Inc. to transport ocean shipping container No. GSTU 2848676 by truck from the Sealand Terminal in Newark, New Jersey to Harrisburg, Pennsylvania, for delivery/interchange to a second trucking company, GPS Transportation, for on-carriage to the ultimate destination in Reading, Pennsylvania (Maersk Line Ex. "C"). Plaintiff PVH's warehouse facility is located in Reading, Pennsylvania.

7. The Uniform Intermodal Interchange and Facilities Access Agreement ("UIIA") is a standard, uniform agreement governing the rights and liabilities of certain intermodal carriers.

8. Both Maersk Line and Kellaway Transportation Inc. are signatories to the UIIA and their respective rights and obligations are governed by the version of the UIIA that was in effect at the time of the underlying incident (Maersk Line Ex. "T").

9. On June 17, 1999 at the Sealand Terminal in Newark, New Jersey, Maersk Line delivered ocean shipping container No. GSTU 2848676 with Seal No. 01100356 intact to Kellaway Transportation, Inc.'s driver. Kellaway Transportation entered the terminal at 8:17 a.m. on June 17, 1999 and left the terminal with sealed ocean shipping container No. GSTU 2848676 at 9:44 a.m. on June 17, 1999. At that time the container was on a chassis for land transport. (Maersk Line Ex. "E").

10. Kellaway Transportation, Inc. did not deliver ocean shipping container No. GSTU 2848676 to GPS Transportation, Inc. in Harrisburg, Pennsylvania.

11. Kellaway has alleged that ocean shipping container No. GSTU 2848676 and two other ocean shipping containers, ("the Mitsui Containers"), were stolen by unknown third parties from its Harrisburg, Pennsylvania container yard located at 4390 Chambers Hill Road sometime

between 6:00 p.m. on Friday, June 18, 1999 and 4:30 p.m. on Sunday, June 20, 1999. (Maersk Line Ex. "Q").

12.    Plaintiff initiated the instant action against Maersk Line, alleging monetary damages resulting from the disappearance of ocean shipping container No. GSTU 2848676.

13.    Plaintiff has failed to prove its *prima facie* case against Maersk Line.

## ON MAERSK LINE'S THIRD-PARTY CLAIM AGAINST KELLAWAY

14.    On July 17, 2000, Maersk Line tendered its defense of the instant action to Kellaway pursuant to the terms and conditions of the UIIA. (Maersk Line Ex. "N").

15.    Kellaway did not provide a defense or insurance for Maersk Line, and Maersk Line was forced to provide its own defense to the instant action.

16.    On January 9, 2001 Maersk Line filed its third-party complaint against Kellaway pursuant to Rules 9(h) and 14(c) of the Federal Rules of Civil Procedure.

17.    The container yard where Kellaway claims ocean shipping container No. GSTU 2848676 was stolen is located at 4390 Chambers Hill Road, Harrisburg, Pa. and was leased by Kellaway Transportation from J.V.E. Co., Inc. by way of written lease. (Maersk Line Ex. "G").

18.    Kellaway marketed its container yard to the public as a U.S. Customs approved bonded facility with adequate security measures in place.

19.    Kellaway reported that its driver, William Gross, discovered the break-in at the container yard on June 20, 1999 at 4:15 p.m.

PBH: 145518.1

4

20. Investigation subsequent to the events of June 17 - 20, 1999 revealed that during the time period of June 17 through June 20, 1999 the container yard, although a U.S. Customs approved bonded facility, had inadequate security measures in place.

21. At the inception of its lease of the container yard Kellaway Transportation installed a chain link fence around the perimeter of the yard with a gate at the entrance.

22. The gate was not electronically controlled nor was it manned by a security guard.

23. When the container yard was closed and unmanned, the gate was secured with a chain and key lock.

24. The normal business hours for the yard were 7:00 a.m. to 6:00 p.m. Monday through Friday and it was not manned on a 24-hour basis.

25. All Kellaway drivers, including non-employee independent owner/operators, had the key to the lock on the gate and could access the yard outside of the normal business hours.

26. During the time period in question Kellaway had no control over or record of who, when and why drivers would enter the yard.

27. Subsequent to the events of June 17-20, 1999 it was determined that the facility: (1) was not equipped with adequate lighting; (2) was not equipped with an electronic alarm system; (3) had no security guard, security patrol or gate guard at the yard at any time including nights and weekends when no Kellaway personnel were present at the yard; and (4) was not equipped with video camera security.

28. Subsequent to the events of June 17-20, 1999 it was determined that Kellaway Transportation failed to take measures at the yard to store the subject container in a manner which

would have blocked the container in question with other containers to make more difficult to remove from the yard.

29. The contract between Kellaway and Maersk Line was the Intermodal Interchange and Facilities Access Agreement ("UIIA") which is administered by the Intermodal Association of North America, 7501 Greenway Center Drive, Suite 720, Greenbelt, Maryland 20770-6705.

30. Under the UIIA Agreement, paragraph VII of the Maersk Line Addendum and Paragraph 6(f) of the main agreement, Kellaway was required to procure insurance to cover Maersk Line for the claims which are the subject of this lawsuit. In violation of the UIIA, Kellaway failed to procure said insurance to cover Maersk Line and now must indemnify, defend, and hold Maersk Line Harmless in connection with this lawsuit.

31. Under said contract and due to Kellaway's negligent security, Kellaway must indemnify Maersk Line for any liability it might have to plaintiff, said liability being denied by Maersk Line, together with the cost of defending the claims made by plaintiff.

32. On or about July 2, 1999 Container No. GSTU 2848676 and a 1992 Freightliner tractor were found at 2590 Baily Avenue, Bronx, N.Y. The container was empty. Kellaway subsequently offered a $20,000 reward for information leading to the conviction of the persons responsible for the theft.

33. The distance from Karachi, Pakistan to Newark, New Jersey is approximately 7,200 miles.

34. The distance from Newark, New Jersey to Reading, Pennsylvania is approximately 115 miles.

35. On June 21, 1999, Kellaway Transportation Inc. issued an invoice to Maersk Line in the amount of $265.00 for its services, which invoice was paid in full. (Maersk Line Exs. "P" and "S").

**Proposed Conclusions of Law**

1. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1333, as it is a civil action within the Court's admiralty jurisdiction.

2. For purposes of admiralty jurisdiction, the Maersk Line Bill of Lading is a "mixed" contract, as it contains both maritime and non-maritime obligations. See Berkshire Fashions, Inc. v. M.V. HAKUSAN II, 954 F.2d 874, 880 (3rd Cir. 1992).

3. For purposes of admiralty jurisdiction, the land segment of the transportation from the Port of Newark, New Jersey to Reading, Pennsylvania–approximately 115 miles--is "incidental" to the ocean transit from Karachi, Pakistan–in excess of 7,200 miles. See Patria v. M/V SEALAND ATLANTIC, No. 00-3454, 2000 W.L. 815876 at * 1, 2000 A.M.C. 2473 (E.D.La. June 22, 2000) (175-mile land portion of transportation merely incidental to ocean voyage from England to El Salvador); Project Hope v. M/V IBN SINA, No. 97-3853, 2000 W.L. 297182 at *12 n. 6 (S.D.N.Y. Mar. 21, 2000) (land-based transport to ocean terminal was relatively short and, thus, incidental to transport from Virginia to Egypt); Joe Boxer v. Fritz Transport Int'l, 33 F. Supp.2d 851, 856 (C.D.Ca. 1998) (62-mile land-based transport merely incidental to transoceanic voyage).

4. Alternatively, this Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a)(2), as it is a civil action where the matter in controversy exceeds the sum of $75,000.00 and it involves the citizens of a State and the citizens of a foreign state.

5. Alternatively, this Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331, as it is an action arising under the federal common law of the United States. Nippon Fire & Marine Ins. Co., Ltd. v. Skyway Freight Systems, Inc., 235 F.3d 53, 59 n. 2 (2d Cir. 2000).

6. This Court has jurisdiction over Maersk Line's Third-Party Complaint as this is a civil action within the Court's admiralty jurisdiction. 28 U.S.C. § 1333; Marine Transportation Services Sea-Barge Group, Inc. v. Python High Performance Marine Corp., 16 F.3d 1133, 1139 (11th Cir. 1994).

7. This Court has supplemental jurisdiction over Maersk Line's Third-Party Complaint pursuant to 28 U.S.C. § 1367(a), as it is related to and forms part of the same controversy as Plaintiff's claim. 28 U.S.C. § 1367(a); Id.

8. Plaintiff's claim against Maersk Line is governed by the terms and conditions of the contract of carriage, Maersk Line Bill of Lading No. MAEU-YCG-J-05408.

9. Clause 5 of the terms and conditions on the reverse side of Maersk Line Bill of Lading No. MAEU-YCG-J-05408 provides in relevant part:

CARRIER'S RESPONSIBILITY

> The Carrier [Maersk Line] undertakes responsibility from the place of receipt if named herein or from port of loading to the port of discharge or the place of delivery if named herein as follows:
> 1. If it can be proved that the loss or damage occurred while the Goods were in custody of an inland carrier [Kellaway Transportation] the liability of the Carrier and the limitation thereof shall be determined in

PBH: 145518.1

8

>accordance with the inland carrier's contract of carriage or tariffs, or in the absence of such contract or tariff, in accordance with the internal law of the state where the loss or damage occurred provided that where such contract or tariff does not exist the limit shall be as set out in Clause 6.

In accordance with the above provision, Maersk Line is entitled to rely upon any defense or limitation of liability enjoyed by Third-Party defendant Kellaway pursuant to contract or tariff. (Maersk Line Ex. "B").

10. In the event that Kellaway does not have a contract of carriage or tariff applicable to its carriage of ocean shipping container No. GSTU 2848676, pursuant to Clause 5 of the Maersk Line Bill of Lading, the law of the State of Pennsylvania governs the rights and liabilities of Plaintiff and Maersk Line. (Maersk Line Ex. "B").

11. The applicable law is the law of bailment.

12. Under Pennsylvania law, bailment is defined as "a delivery of personalty for the accomplishment of some purpose upon a contract, express or implied, that after the purpose has been fulfilled, it shall be redelivered to the person who delivered it, or otherwise dealt with according to his directions." Price v. Brown, 545 Pa. 216, 221, 680 A.2d 1149 (1996).

13. In order to make a *prima facie* case for breach of bailment, Plaintiff must show that the allegedly lost cargo was delivered to Maersk Line and/or its agents and that the cargo was not returned. Id.

14. Plaintiff has failed to make a *prima facie* case of liability because it has failed to prove that Maersk Line received the merchandise in good order and condition at the port of loading.

15. Alternatively, in the event that Plaintiff is able to make its *prima facie* case, the burden then shifts to Maersk Line to show offer an explanation for the failure to redeliver the shipment. Id.

16. Maersk Line has shown that the shipment was stolen by unknown third parties while in the possession of Maersk Line's agent, Kellaway Transportation. Thus, the burden shifts back to Plaintiff to show that Maersk Line was negligent. Id.

17. The bailment of the container was for the mutual benefit of Maersk Line and Plaintiff and so Maersk Line is held to a standard of "reasonable and ordinary care." American Enka Co. v. Wicaco Machine Corp., 686 F.2d 1050, 1053 (3d Cir. 1982).

18. Plaintiff has failed to show that Maersk Line is negligent.

19. Alternatively, in the event that Plaintiff's claims are subject to the Carriage of Goods By Sea Act ("COGSA"), 46 U.S.C. 1300 et seq., as alleged in Plaintiff's Complaint, then Plaintiff's claims are barred and defendant Maersk Line is exonerated from any liability pursuant to 46 U.S.C. 1304(2)(q) due to the absence of actual fault and privity by Maersk Line. 46 U.S.C. §1304(2)(q); U.N./F.A.O. World Food Programme v. M.V. Tay, 1997 A.M.C. 2535, 1997 W.L. 714901 (S.D.Tex. 1997).

20. Maersk Line's liability to Plaintiff as a common carrier is not governed by the Pennsylvania Public Utilities Code, 66 Pa.C.S. Sec. 101, et seq., because the transportation of the container was not from one point in the Commonwealth to another point in the Commonwealth. Pennsylvania Public Utilities Code, 66 Pa.C.S. §2304.

21. Even if Pennsylvania Public Utilities Code, 66 Pa.C.S. Sec. 101 were found to apply, in order to make a *prima facie* case that Maersk Line is liable, Plaintiff is required to prove that the allegedly lost cargo was actually loaded inside ocean shipping container No. GSTU 2848676 and sealed, prior to being delivered to Maersk Line by PVH. Bally Inc. v. M/V Zim America, 22 F.3d 65 (2d Cir. 1994); Intercontinental Trading Co. Inc. v. M/V Zenith Sun, 684 F. Supp. 861 (E.D.Pa. 1988); Hams Express, Inc. v. Joseph Land & Co., Inc., 506 F. Supp. 209, 214 (E.D.Pa. 1980).

22. Plaintiff has failed to make a *prima facie* case of liability because it has failed to prove that Maersk Line received the merchandise in good order and condition at the port of loading.

23. Alternatively, in the event that Maersk Line is found liable to Plaintiff, the quantum of Plaintiff's damages is based upon Plaintiff's actual loss. First National Bank & Trust Co. of Newtown, 797 F. Supp. at 1273.

24. Plaintiff's actual loss was the amount it paid for the textiles claimed, plus customs duty and freight paid. (Maersk Line Exs. "K"-"M").

25. Plaintiff had a duty to mitigate its losses, and any recovery should be reduced by its unreasonable failure to mitigate. See Marathon Pipeline Co. v. M/V SEA LEVEL II, 806 F.2d 58 (5th Cir. 1986).

26. Consequential damages are not recoverable under the applicable maritime law. Majica v. Authoridad de las Puerto Rico, 1994 AMC. 1316 (D.P.R. 1993).

27. Plaintiff could have replaced the goods it alleges were lost, and, thus, its damages are limited to the manufacturing cost of the goods. Pacol (Canada) Ltd. v. M/V MINERVA, 523 F.

Supp. 579, 582 (1981 S.D.N.Y.); <u>H. Daroff & Sons, Inc. v. Strickland Transportation Co., Inc.</u>, 284 F. Supp. 510, 513 (E.D.Pa. 1968).

28. Plaintiff has failed to produce the alleged purchase orders or contracts of sale for the shirts to its alleged buyer in the United States, Ross Department Stores, and thus, a negative inference must be made that the terms and conditions of the purchase order and/or master contract of sale would preclude Plaintiff from recovering an amount above the price it paid for the allegedly lost merchandise.

## ON MAERSK LINE'S THIRD-PARTY CLAIM AGAINST KELLAWAY

29. The rights and liabilities between Maersk Line and Kellaway are governed by the Uniform Intermodal Interchange and Facilities Access Agreement ("UIIA") in effect between Kellaway and Maersk Line in June of 1999. See <u>Mack v. Consolidated Rail Corp.</u>, 24 F. Supp.2d 126, 128 (D.Mass. 1998); <u>Harco National Ins. Co. v. Bobac Trucking, Inc.</u>, No. 93-01295, 1995 W.L. 482330 at *6 (N.D.Cal. Aug. 4, 1995); <u>Clement v. Consolidated Rail Corp.</u>, No. 88-3793, 1989 W.L. 145018 at *3 (D.N.J. Nov. 9, 1989). (Maersk Line Ex. "T").

30. Pursuant to the applicable UIIA, Kellaway agreed to hold harmless and fully indemnify Maersk Line against any liability suffered by Maersk Line arising out of Kellaway's negligent acts or omissions during the "Interchange Period" as defined by the UIIA. See <u>Mack v. Consolidated Rail Corp.</u>, 24 F. Supp.2d 126, 128 (D.Mass. 1998); <u>Harco National Ins. Co. v. Bobac</u>

Trucking, Inc., No. 93-01295, 1995 W.L. 482330 at *6 (N.D.Cal. Aug. 4, 1995). (Maersk Line Ex. "T").

31. Pursuant to the applicable UIIA, Kellaway agreed to provide legal defense to Maersk Line for any claim brought against Maersk Line. (Maersk Line Ex. "T").

32. The UIIA defines "Interchange Period" as "The period, commencing upon Interchange to Motor Carrier [Kellaway] and concluding upon Interchange to Provider [Maersk Line]." (Maersk Line Ex. "T").

33. The theft of ocean shipping container No. GSTU 2848676 occurred during the "Interchange Period" and prior to Kellaway interchanging said container to the next inland carrier, GPS Transportation. (Maersk Line Ex. "Q").

34. Kellaway was negligent in failing to provide adequate security for ocean shipping container No. GSTU 2848676 at its Chambers Hill Road terminal facility. See Groupe Chegaray/V. de Chalus v. P&O Containers, 251 F.3d 1359 (11th Cir. 2001); Tokio Marine Management, Inc. v. M/V "ZIM TOKYO", 1995 A.M.C. 2263 (S.D.N.Y. 1995); The English Whipple Sailyard, Ltd. v. The Yawl ARDENT, 459 F. Supp. 866 (W.D.Pa. 1978). (Maersk Line Ex. "J").

35. Kellaway breached the UIIA by failing to provide a defense for Maersk Line and is liable to Maersk Line for the costs incurred by Maersk Line in defending the present action and in enforcing the UIIA agreement against Kellaway, including all attorneys' fees incurred by Maersk Line. See Mack v. Consolidated Rail Corp., 24 F. Supp.2d 126, 128 (D.Mass. 1998); Harco National Ins. Co. v. Bobac Trucking, Inc., No. 93-01295, 1995 W.L. 482330 at *6 (N.D.Cal. Aug. 4, 1995).

36. In the event that Maersk Line is found liable to Plaintiff, said liability being denied, pursuant to the UIIA, Maersk Line is entitled to full indemnity from Kellaway for any amounts paid to Plaintiff.

37. Pursuant to the UIIA, Kellaway agreed to provide insurance coverage for the benefit of Maersk Line covering, *inter alia*, the claims which are the subject of this lawsuit and any liabilities incurred by Maersk Line. (Maersk Line Ex. "T").

38. Kellaway breached the UIIA by failing to procure insurance coverage for the benefit of Maersk Line and is liable to Maersk Line for the costs incurred by Maersk Line in defending the present action and in enforcing the UIIA agreement against Kellaway, including all attorneys' fees incurred by Maersk Line and any liability Maersk Line might have, said liability being denied.

39. Alternatively, even if the UIIA is not controlling, Kellaway must indemnify Maersk Line under common law principles of indemnity for negligence and breach of bailment.

40. Although the Carmack Amendment to the Interstate Commerce Act usually governs interstate truck carriage, the Carmack Amendment does not apply to overland interstate truck carriage that is part of an international import shipment where the carriage is governed by a through bill of lading and no separate bill of lading has been issued by the truck carrier for the domestic portion of the transportation. Tokio Marine & Fire Ins. Co., Ltd. v. Nippon Yusen Kaisha, 25 F. Supp.2d 1071, 1081 (C.D.Ca. 1997); New York Marine & General Ins. Co. v. S/S "MING PROSPERITY", 920 F. Supp. 416, 425 (S.D.N.Y. 1996); Kenny's Auto Parts, Inc. v. Baker, 478 F. Supp. 461, 464 (E.D.Pa. 1979).

41. The rights and liabilities between Maersk Line and Kellaway are governed by common law principles of bailment and negligence. See SPM Corp. v. M/V "MING MOON", 1994 A.M.C. 1758, 1762 (3d Cir. 1994); Marine & Fire Ins. Co., Ltd. v. Nippon Yusen Kaisha, 25 F. Supp.2d 1071, 1081-82 (C.D.Ca. 1997); Compania Sud Americana de Vapores, S.A. v. I.T.O. Corp. of Baltimore, 940 F. Supp. 855, 863 (D.Md. 1996).

42. Under Pennsylvania law, bailment is defined as "a delivery of personalty for the accomplishment of some purpose upon a contract, express or implied, that after the purpose has been fulfilled, it shall be redelivered to the person who delivered it, or otherwise dealt with according to his directions or kept until he reclaims it." Price v. Brown, 545 Pa. 216, 221, 680 A.2d 1149 (1996).

43. The contract between Maersk Line and Kellaway with regard to ocean shipping container No. GSTU 2848676 was a bailment under Pennsylvania law.

44. The bailment was for the mutual benefit of Maersk Line and Kellaway, and thus Kellaway was required to exercise reasonable and ordinary care with regard to ocean shipping container No. GSTU 2848676. American Enka Co. v. Wicaco Machine Corp., 686, F.2d 1050, 1053 (3d Cir. 1982).

45. Maersk Line has made a *prima facie* case of breach of bailment against Kellaway because it delivered ocean shipping container No. GSTU 2848676 to Kellaway, and Kellaway never returned ocean shipping container No. GSTU 2848676 to Maersk Line. Price v. Brown, 545 Pa. 216, 221-222, 680 A.2d 1149, 1152 (1996).

46. Kellaway has failed to demonstrate the manner in which ocean shipping container No. GSTU 2848676 was lost and is therefore liable to Maersk Line for breach of its bailment obligation. See Id.

47. Alternatively, in the event Kellaway is able to demonstrate that ocean shipping container No. GSTU 2848676 was stolen by third parties, Maersk Line has proved that Kellaway was negligent in failing to provide adequate security for ocean shipping container No. GSTU 2848676 at its Chambers Hill Road terminal facility, see Groupe Chegaray/V. de Chalus v. P&O Containers, 251 F.3d 1359 (11th Cir. 2001); Tokio Marine Management, Inc. v. M/V "ZIM TOKYO", 1995 A.M.C. 2263 (S.D.N.Y. 1995); The English Whipple Sailyard, Ltd. v. The Yawl ARDENT, 459 F. Supp. 866 (W.D.Pa. 1978), and, hence, Kellaway is liable to Maersk Line for full indemnity.

48. Maersk Line and Kellaway's contract for services contained an implied warranty of workmanlike performance, warranting that Kellaway would perform its duties under the contract in a workmanlike manner. See, e.g., Compania Sud Americana de Vapores, S.A. v. I.T.O. Corp. of Baltimore, 940 F. Supp. 855, 866 (D.Md. 1996) (citing cases).

49. No showing of negligence is required to establish a breach of the implied warranty of workmanlike service. Id.

50. Kellaway breached its implied warranty of workmanlike service by failing to redeliver ocean shipping container No. GSTU 2848676 to Maersk Line, and thus, is liable to Maersk Line for full indemnity. Id.; New York Marine & General Ins. Co. v. S/S "MING PROSPERITY", 920 F. Supp. 416, 426 (S.D.N.Y. 1996).

Dated: February 11, 2002
      Philadelphia, Pennsylvania

                              PALMER BIEZUP & HENDERSON LLP

                          By: _____
                              Richard Q. Whelan (ID # 35688)
                              William E. Ecenbarger, Jr.
                              Attorneys for Defendant and Third
                              Party Plaintiff DAADS
                              620 Chestnut Street, 956 Public Ledger Building
                              Philadelphia, PA 19106-3409
                                  (215) 625-9900

PBH: 145518.1

## **CERTIFICATE OF SERVICE**

The undersigned counsel hereby certifies that service of a true and correct copy of Defendant/Third-Party Plaintiff DAADS' (t/a Maersk Line) Amended Proposed Findings of Fact and Conclusions of Law was made to the below-listed counsel on February 11, 2002 via United States First-Class Mail, postage prepaid and will also be served on all counsel by hand on February 12, 2002.:

George R. Zacharkow, Esquire
Mattioni Ltd.
399 Market Street, 2nd Floor
Philadelphia, PA 19106

Carl H. Delacato, Esquire
Hecker, Brown, Sherry & Johnson
1700 Two Logan Square
18th & Arch Streets
Philadelphia, PA 19103

Ann-Michele G. Higgins, Esquire
Rawle & Henderson LLP
The Widener Building
One South Penn Square
Philadelphia, PA 19107

Patrick J. Keenan, Esquire
Duffy & Keenan
The Curtis Center, Suite 1150
Independence Square West
Philadelphia, PA 19106

PALMER BIEZUP & HENDERSON LLP

By: _____
William E. Ecenbarger, Jr.
Attorneys for DAADS t/a Maersk Line
620 Chestnut Street
956 Public Ledger Building
Philadelphia, PA 19106-3409
(215) 625-9900

PBH: 146398.1