ORIGINAL

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| PHILLIPS–VAN HEUSEN CORP. : | |
| Plaintiff : | |
| v. : | |
| J. V. E. Co., Inc. : | CIVIL ACTION |
| : | NO. 1: CV-00-0665 |
| Defendant : | (Judge Sylvia H. Rambo) |
| and : | |
| MITSUI O.S.K. LINES, LTD.; : | |
| DAMPSKIBSSELSKABET AF 1912 : | |
| AKTIESELSKAB : | |
| and : | |
| AKTIESELSKABET : | |
| DAMPSKIBSSELSKABET SVENDBORG : | |
| trading as Maersk Line and Maersk Line, Inc. : | |
| Defendants/Third Party Plaintiffs : | |
| v. : | |
| KELLAWAY TRANSPORTATION, INC., : | |
| KELLAWAY INTERMODAL & : | |
| DISTRIBUTION SYSTEMS, : | |
| KELLAWAY INTERMODAL : | |
| SERVICES, INC. and KELLAWAY : | |
| TERMINAL SERVICES, INC., : | |
| Third Party Defendants : | |

## **PLAINTIFF'S PROPOSED CONCLUSIONS OF LAW**

U:\DOCS\grz\ATL--Kellaway\PVH COL 4--10.wpd

**Preliminary Conclusions of Law**

1. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §1333, 28 U.S.C. §1332, and 28 U.S.C. §1367.

2. This Court has jurisdiction over the person of the parties.

3. Venue for this action properly lies within this District under 28 U.S.C. §1391.

4. The applicable law in this case is the General Maritime Law of the United States, as supplemented by the Carriage of Goods by Sea Act, 46 U.S.C. §1300 *et seq.*, the Harter Act of 1893, 46 U.S.C. §190, *et seq,* and federal common law.

5. The Phillips-Van Heusen Corporation is the proper party Plaintiff, as it purchased the shipments at issue pursuant to letters of credit that it opened, and it was the owner of the shipments and entitled to delivery of the shipments at the time of their loss. *Internatio, Inc. v. M/V YINKA FOLAWIYO,* 480 F. Supp. 1245 (E.D. Pa. 1979).

6. Mitsui and Maersk owned and/or operated the vessels that transported the container shipments to the United States and are common carriers of goods by sea.

7.  Mitsui and Maersk issued Through Bills of Lading and were responsible for safely delivering the shipments to Phillips at Reading, Pennsylvania. *Austratan v. Neptune Orient Lines*, 612 F. Supp. 578 (S.D.N.Y. 1985). *See also Koppers Co., Inc. v. S/S DEFIANCE*, 542 F. Supp. 1356 (D. Md. 1982); *B. Elliot (Canada) Ltd. v. John T. Clark & Son*, 542 F. Supp. 1367 (D. Md. 1982).

8.  Plaintiff has established a *prima facie* case against Mitsui and Maersk, as carriers by establishing the delivery of loaded containers to the carriers, and by establishing that they failed to deliver the shipments to the agreed destination, set forth in the Through Bills of Lading, thereby causing Plaintiff to suffer damages. *Westway Coffee Corporation v. M/V NETUNO*, 528 F. Supp. 113 (S.D.N.Y. 1981) <u>affirmed</u> 675 F. 2d 30 (2d Cir. 1982); *David Crystal, Inc. v. Cunard Steam-Ship Co.*, 339 F. 2d 295 (2d Cir. 1964); *Tokio Marine & Fire Insurance Co., Ltd. v. M/V L. JALABERT BONTANG*, 624 F. Supp. 402 (S.D.N.Y. 1985); *Escriptorio Suplicy, Inc. v. Companhia DeNevegacao Maritima Netumat*, 1978 A.M.C. 138 (S.D.N.Y. 1977).

9. Once Plaintiff has established its *prima facie* case[1], it is Defendants' burden to come forward and demonstrate that the claimed loss resulted from one of the excepted causes under the statute. *Escriptorio Suplicy, Inc.*, 1978 A.M.C. at 140. To this end, Defendants seek solace under Section 1304(2)(q) of COGSA, which exempts the carrier from liability for damage or loss

> . . . arising without the actual fault and privity of the carrier, or without fault or neglect of the agents or servants of the carrier, but the burden of proof shall be on the person claiming the benefit of this exception to show that neither the actual fault or privity of the carrier nor the fault or neglect of the agents or servants of the carrier contributed to the loss or damage.

46 U.S.C. §1304(2)(q). Under this exception, in addition to showing its own lack of fault or privity, the carrier must also show that no party to whom it had delegated any of its responsibility to care for the cargo was at fault. *Agrico Chemical Co.*, 459 F.Supp. at 647. In *Agrico,* the District Court held (and the Fifth Circuit affirmed) that the carrier is liable for negligence of those parties in whose hands it has placed the goods, whether the parties are servants, agents, or independent contractors, reasoning:

> There is no indication in COGSA or in its legislative history that the term "agent" used in § 1304 2(q) should be construed in terms of the bill of lading such that only those third parties performing work under the bill of

---

[1] Plaintiff submits that the evidence of the non-delivery of the container is sufficient to make out its *prima facie* case, and that the evidence of the contents of the container goes to the *quantum* of damages.

> lading would be considered as agents. Section 1304 2(q) ("Q Clause") is a catchall exception that allows the carrier to exonerate itself from liability by sustaining the burden of proving that it was in no way at fault in causing the loss of cargo at issue. In demonstrating this lack of fault, the carrier must also show that no party to whom it had delegated any of its responsibility to care for the cargo was at fault. **The carrier has the non-delegable duty of properly and carefully loading, handling, stowing, carrying, keeping, caring for, and discharging the goods carried. § 1303(2). For that reason it may not insulate itself from liability by the use of independent contractors. For any failure by the independent contractor to care for the cargo is also a failure by the carrier to do the same.** *Interstate Steel Corp. v. SS Crystal Gem*, 317 F. Supp. 112 (D.C.N.Y.1970). **A carrier is liable for any negligence of those parties in whose hands it has placed the goods, whether the parties are servants, agents, or independent contractors.** *David Crystal, Inc. v. Cunard S.S. Company*, 339 F.2d 295, 298 (2d Cir. 1964), cert. denied, 380 U.S. 976, 85 S. Ct. 1340, 14 L. Ed. 2d 271 (1965).

*Id.* ( Emphasis added.) *See also Asahi America v. Arild Maersk*, 602 F.Supp. 25, 1986 AMC 53 (S.D.N.Y. 1986)(holding that the carrier, Maersk, could not limit its liability under COGSA, §1304(2)(q), for the loss of a container while in the possession of the overland trucking company because the trucking company was "clearly the sub-contractor of or agent of Maersk, as plaintiff contracted only with Maersk for delivery to Boston.").

    10.    Mitsui and Maersk hired Kellaway to perform part of their delivery duties, and at all times material hereto, Kellaway was acting as agent and/or

servant of Mitsui and Maersk. They are liable for loss of the shipments occurring while they were in the custody of Kellaway to the same extent as if the cargo were in their actual physical possession. *Agrico Chemical Company v. S/S Atlantic Forest*, 459 F. Supp. 638 (E.D. LA 1978), affirmed 620 F.2d 487 (5th Cir. 1980); *David Crystal, Inc. v. Cunard Steam-Ship Co.*, 339 F. 2d 295 (2d Cir. 1964); *Internatio, Inc. v. M/V YINKA FOLAWIYO*, 480 F. Supp. 1245 (E.D. Pa. 1979); *Escripttorio Suplicy, Inc. v. Companhia De Navegocao Martima Netumar*, 1978 A.M.C. 138 (S.D.N.Y. 1977); *Morse Electric Products Corp. v. S.S. GREAT PEACE*, 437 F. Supp. 474 (D.C.N.J. 1977).

11. In view of the above, Defendants cannot rebut Plaintiff's *prima facie* case by invoking the defense afforded under §1304(2)(q) of COGSA. This is the case not only because Defendants are liable for the negligence of Kellaway, their agent or subcontractor, but also because they are liable for their own actual fault and privity. Neither Mitsui nor Maersk took any action to ensure that the security at the Kellaway yard would be appropriate to protect the valuable container shipments that it entrusted to Kellaway. They did not issue any written security instructions or requirements. They did not inspect the yard during nonbusiness hours, when it was unmanned, to evaluate the nature of the risks and extent of the security in place. Apparently they selected Kellaway, rather than the other yards in the Harrisburg area, because Kellaway was cheaper.

12. Plaintiff also has established a *prima facie* case against Mitsui and Maersk, as bailees, by establishing that the shipments were delivered to them and the fact that they failed to deliver the shipments to Plaintiff as requested, thereby causing Plaintiff to suffer damages. *Leather's Best, Inc. v. SS MORMACLYNX*, 451 F. 2d 800 (2d Cir. 1971); *A.C. Israel Commodity Co., Inc. v. Lavino Shipping Co.*, 1968 A.M.C. 139 (E.D. Pa. 1967).

13. Under Pennsylvania bailment law, the bailee is obligated to redeliver the goods. Upon the failure to do so, the bailee is liable, unless it can show that it was not negligent. Kellaway, Maersk and Mitsui have failed to meet this burden. The expert testimony of Mr. Dunn concerning inadequate security at the Harrisburg container yard is un-refuted. The breach of bailment has been established, and Plaintiff is entitled to damages. *American Enka Co v. Wicaco Machinery Corp.*, 686 F.2d 1050 CA3 (PA) 1982; *Schell v. Miller North Broad Storage Co.*, 16 A.2d 680, 142, Pa. Super. 293 (1941).

14. A bailee cannot by contract relieve itself of liability for its own negligence causing the loss of bailed property. *Downs v. Sley System Garages*, 194 A.772, 129 Pa. Super. 68 (1937).

15. Neither Mitsui nor Maersk has satisfactorily rebutted Plaintiff's *prima facie* case. *Sun Oil Co. of Pennsylvania v. MT CARISLE*, 771 F. 2d 805 (3d Cir. 1985).

16. It is well established in the law that the purpose in awarding damages is to place the injured party in the same position it was in before the damage occurred. *See Saint Johns N.F. Shipping Corp. v. S.A. Companhia Commercial*, 263 U.S. 119, 125 (1923). Section 1304(5) of COGSA provides that "[i]n no event shall the carrier be liable for more than the amount of damage actually sustained." The general rule is that the "amount of damage actually sustained" is

> the difference between the fair market value of the goods at their destination in the condition in which they should have arrived and the fair market value of the goods in the condition in which they actually did arrive. This is not a hard and fast rule. When circumstances suggest a more appropriate alternative, the fair market value test may be superceded by another method of calculating damages.

*Valerina Fashions v. Hellman Intern. Forwarders*, 897 F.Supp. 138, 140 (S.D.N.Y. 1995) quoting *Texport Oil Co. v. Amolyntos*, 11 F.2d 361, 365 (2d Cir. 1993). *See generally Santiago v. Sea-Land Service, Inc.*, 366 F.Supp. 1309 (D. P.R. 1973)(general discussion regarding use of different measures of damages and recovery of lost profit).

17. "Courts have allowed the recovery of lost profits under this 'fair market value' measure by accepting as evidence of the fair market value at the destination, the price at which the shipper could resell the goods had the goods been shipped." *Shonac Corporation v. Maersk, Inc.*, 159 F.Supp.2d 1020, 2001 A.M.C. 1924, 1933 (S.D. OH 2001). In the instant case, the amount of Phillips' loss is properly established by the existing contract for resale entered into between Phillips and its retail customers, which the non-delivered shipments were destined to fulfill. *Internatio, Inc. v. M.S. TAIMYR*, 602 F. 2d 49, 50 (2d Cir. 1979); *Austracan*, 1985 A.M.C. at 2964 (holding that the amount of loss is proved by the contemporaneous contract for resale which furnishes the most accurate measure of damages suffered). Such a contract furnishes the most accurate measure of market value and damages suffered by Phillips. The recovery of this resale price places Phillips in the position it would have been in had the shipments been delivered, but for the costs incurred in seeking to recover for its loss. *Shonac,* 2001 A.M.C. at 1933.

18. The usual measure of damages recoverable by a cargo owner or shipper is determined by the market value at the port of destination at the time the goods were due to arrive. *Shonac Corporation v. Maersk, Inc.*, 2001 A.M.C. 1924 (S.D. OH 2001); *Atlantic Mutual Ins. Co. v. Poseidon Schiffahrt*, 413 F. 2d 872

87016-1

(7th Cir. 1963), <u>cert. denied</u>, 375 U.S. 819 (1963); *Santiago v. Sea-Land Services, Inc.*, 366 F. Supp. 1309 (D.P.R. 1973).

19.   COGSA makes invalid all provisions set out by a carrier in its bill of lading which seek to lessen its liability "otherwise than as provided in this act." 46 U.S.C. §§1302, 1303(B).  <u>See</u>, *Jefferson Chemical Co. Inc. v. M/T GRENA*, 413 F. 2d 864 (5th Cir. 1969); <u>cert. denied</u> 380 U.S. 976 (1965). Under COGSA, a carrier cannot limit its liability to less than $500 per package. *Hartford Fire Insurance Company v. M/V OOCL BRAVERY*, 199 U.S. Dist. LEXIS 17945 (S.D. NY 1999). The cartons of shirts carried in the containers were the packages for purposes of the $500 COGSA package limit. *See, Monica Textile Corp. v. S.S. Tana*, 952 F.2d 636 (2d Cir. 1991).

20.   The amount of the loss is properly proved by the contemporaneous contract for resale entered into between Phillips and its retail customers, which these shipments were destined to fulfill. *Internatio, Inc. v. M.S. TAIMYR*, 602 F. 2d 49, 50 (2d Cir. 1979).  Such a contract furnishes the most accurate measure of damages suffered by an importer and its customers.  The recovery of this resale price places Phillips in the position it would have been in had the shipments been delivered, but for the costs incurred in seeking to recover for its loss. *Shonac Corporation v. Maersk, Inc.*, 2001 A.M.C. 1924 (S.D. OH 2001).

21.     The sales prices for the shirts were memorialized in the computer screen prints for the various styles (Plaintiff's Exhibits 49-51) and these constitute Phillips' business records, and are properly admitted in evidence under Fed. R. Evid. 803(6). *In Re: Tonya Renee French,* U.S.D.C. S. D. AL. 1999, US Dist. Lexis 16933 (discussing Fed. R. Evid. 803(6) and its application to computer records).

22.     Plaintiff also incorporates by reference the legal authority and propositions set forth in its Trial Brief.

**Ultimate Conclusions of Law**.

23.     This Court finds that Plaintiff's losses were caused by the failure of Defendants Mitsui and Maersk breach of their contracts with Phillips, and their failure to exercise reasonable care under the circumstances in the handling of Plaintiff's cargo.

24.     Mitsui and Maersk are liable to Phillips for the fair market value of the non-delivered shipments.

25.     Plaintiff is entitled to recover prejudgment interest on its damages at the average prime rate, compounded from the date of the loss. *BP Exploration & Oil, Inc. v. Moran Mid-Atlantic Corp.,* 147 F.Supp. 2d 333 (D. NJ 2001).

|   |   |
|---|---|
| January 5, 2002 | MATTIONI, LTD.<br><br>BY: _/s/ George R. Zacharkow_<br>GEORGE R. ZACHARKOW<br>399 Market Street, Second Floor<br>Philadelphia, PA 19106<br>(215) 629-1600<br>Attorney for Plaintiffs - Van Heusen Corporation<br><br>HECKER BROWN SHERRY and JOHNSON<br><br>BY: _/s/ Carl H. Delacato_<br>CARL H. DELACATO, JR.<br>1700 Two Logan Square - 17th & Arch Streets<br>Philadelphia, PA 19103-2769<br>(215) 665-0400<br>Attorney for Plaintiff Phillips - Van Heusen Corporation |