FILED
HARRISBURG

APR 1 , 2002

MARY E. D'ANDREA, CLERK
Per_____
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| PHILLIPS-VAN HEUSEN CORP., | : | CIVIL ACTION |
| | : | |
| Plaintiff | : | |
| v. | : | NO. 1:CV00-0665 |
| | : | |
| J.V.E. Co., Inc. | : | |
| (a/k/a Japan Vehicle Equipment Co., | : | (Judge Sylvia H. Rambo) |
| U.S.A., Inc.) | : | |
| | : | |
| Defendant | : | |
| | : | |
| and | : | |
| | : | |
| MITSUI O.S.K. LINES LTD., | : | |
| | : | |
| Defendant/Third-Party | : | |
| Plaintiff, | : | |
| v. | : | |
| | : | |
| KELLAWAY INTERMODAL AND | : | |
| DISTRIBUTION SYSTEMS, INC., | : | |
| et al. | : | |
| | : | |
| Third-Party Defendants | : | |

0648445.01

# DEFENDANT MITSUI'S TRIAL BRIEF REGARDING THE ISSUE OF ATTORNEY'S FEES

## I. INTRODUCTION

Mitsui seeks to enforce its right to a contractual defense and indemnity from Kellaway in the amount of any judgment against it including attorney's fees and costs incurred in defending Mitsui's case. Mitsui is entitled to a judgment against Kellaway for full indemnity and attorney's fees in this matter. The indemnity agreement at issue is clear and unequivocal and unquestionably applies in the instant case. The agreement was an enforceable contract and for the reasons more fully demonstrated below, and in the proposed findings of fact and conclusions of law accompanying the post-trial memorandum, Mitsui is entitled to judgment against Kellaway in the full amount of any judgment, plus interest, all costs to these proceedings and attorney's fees. Mitsui did not waive its right to attorney's fees by failing to place into the record evidence of the fees.

## II. STATEMENT OF RELEVANT FACTS

In May of 1999, plaintiff, Phillips-Van Heusen Corp. alleged that it purchased 1,484 mens shirts from an Indonesian manufacturer on FOB terms. The goods were allegedly placed into shipping containers and delivered to defendant, Mitsui, for transportation to the United States and delivery to plaintiff at its facility

0648445.01

in Reading, Pennsylvania. The two containers were loaded aboard the M/V APL GARNET in Singapore and discharged in Los Angeles pursuant to through bills of lading 460155893 and 460156264, dated May 16, 1999. The terms of the bills of lading for place of delivery, were Reading, Pennsylvania door. The containers were discharged at Los Angeles on June 5, 1999, and then railed across the country. Following their arrival at the rail head in Kearny, New Jersey, on June 13, 1999, the containers were trucked to the Kellaway terminal in Harrisburg, Pennsylvania, pending delivery to plaintiff.

The containers were sealed prior to delivery to Mitsui, and Mitsui also placed its own seal on the containers. There is no evidence that these seals were disturbed prior to the placement of the containers in the Kellaway terminal. Kellaway was a participant of the Uniform Intermodal Interchange Agreement and Facilities Access Agreement (UIIA) and its transportation and handling of the containers was subject to the agreement. Documentation with regard to customs clearance of the containers indicated that the Mitsui shipments were cleared on Thursday, June 16, 1999, and that notification was faxed to Kellaway at 1351 on that date. Notification was also provided to GPS, the trucker regularly used to complete delivery, at 1353. On Sunday, June 19, 1999, Kellaway reported the three containers stolen from the Kellaway terminal.

0648445.01

One basis for Liability as between Mitsui and Kellaway is controlled by the Uniform Intermodal Interchange Agreement and Facilities Access Agreement ("Agreement"). Under the Agreement, Mitsui is considered a provider because through the Agreement it authorized delivery and/or receipt of physical possession of its equipment with Kellaway, a motor carrier, who was a party to the Agreement. In accordance with Section F of the Agreement, Mitsui tendered the defensive of Mitsui in this matter to Kellaway by letter dated August 27, 2001. Under Section F (4), Kellaway as the motor carrier is required to defend, hold harmless and fully indemnify Mitsui against any and all claims, suits, loss, damage or liability (including reasonable attorney's fees and costs) incurred in the enforcement of the agreement, arising out of or related to Kellaway's performance of the Agreement. The tender was never accepted and the tender was entered into evidence during the trial without objection. Because the attorney's fees were ongoing, and indeed are still continuing, Mitsui did not place its attorney's fees into evidence relying on this Court's inherent power and discretion to rule on the fees after a decision on the merits had been made.

III.  **LEGAL ARGUMENT**

    A.    Mitsui Did Not Waive Its Right to Recover Attorney's Fees by Waiting Until A Decision is Issued to Submit Evidence of the Amount of Attorney's Fees.

0648445.01

In an admiralty case similar to the current action, the Third Circuit Court of Appeals, after ruling on an interlocutory admiralty decree remanded the case back to the district court to decide the indemnification issues. <u>SPM Corp. v. M/V MING MOON</u>, 965 F.2d 1297 (3rd. Cir. 1992). The Third Circuit ruled that because the amount of Blue Anchor's reasonable attorney's fees had not been set, the extent of total liability, including indemnification, had not been determined and the district court's order was not final, even though the rights of the parties had been determined. The case was remanded to determine the indemnification issues. Here, as in the MING MOON case, there has not been a final order and the district court retains jurisdiction to resolve the issue of attorney's fees.

During the trial of this matter the tender of defense letter was entered into evidence without objection. Therefore, the right to contractual indemnity and attorney fees is properly before the court and more importantly Kellaway has notice of it. With regard to the issue of the exact amount of attorney fees to be awarded, it is proper for the court to accept affidavits or motions, with a hearing regarding the fees if disputed, to determine whether they are reasonable. As for the timing of evidence of the fees, it would have been neither practical nor judicially economical for the Court to hear evidence with regard to the extent of fees, because the attorney's fees that Mitsui is entitled to are continuing and would have to be

0648445.01

-5-

examined again in the future. Additionally, experts are sometimes utilized when examining fees and none of the parties were prepared to retain and pay for experts concerning attorney's fees prior to a determination that such an exercise would be necessary.

In another similar case to the current action, Shearson argued that MidAmerica waived any right to an attorney's fees award by failing to present evidence of the fees to the jury. MidAmerica v. Shearson, 962 F.2d 1470 (10th Cir. 1992). The court explained that "this argument of course turns on whether the § 408 attorneys' fees award is a jury question." Shearson argued that it is a jury question because it is listed as an element of substantive damages in the statute. *See supra* note 4, § 408(a)(2) (emphasized). The court explained that the Ninth Circuit, addressing this argument in the context of an identical Idaho statute, held that [t]he mere inclusion of reasonable attorneys' fees in [the statute] as an item of recovery does not mean that the subject of attorneys' fees should have been submitted to the jury as a question at law. The allowance and amount of attorneys' fees is not a jury question, but is within the sound discretion of the trial judge. Id. citing, Hatrock v. Edward D. Jones & Co., 750 F.2d 767, 776 (9th Cir. 1984) (interpreting Idaho Code § 30-1446). The court agreed with the Ninth Circuit's interpretation, and found no authority to indicate that the Oklahoma Supreme Court would interpret §

0648445.01

408 differently. The court stated, "by reciting items of recovery on directed verdict the court did nothing more than paraphrase the statute. Accordingly, we find no waiver." However, even with the distinction that this is a contractual indemnity claim as opposed to a statutory claim, the standard is the same. McGuire v. Russell Miller, Inc., 1 F.3d 1306 (2d Cir.1993). In jury cases, the issue of indemnity is for the jury, and if there is to be such a recovery, the judge decides the reasonable amount, post verdict. Such a ruling avoids the prejudice that Kellaway claims would result if it had not yet hired an expert on the issue. Further, it avoids the impractible possibility that multiple exhibits regarding on-going fees would need to be submitted.

The determination of the award of attorney's fees in this case is within the sound discretion of the trial judge. Up until the time of a final judgment where all of the issues are decided, the trial judge can decide the issue of the quantum of attorney fees at her own discretion including having an additional hearing on the issue.

    B.    The Indemnity Agreement is Aleatory and Not Applicable Until the Underlying Case is Resolved.

Obligations of indemnity, contribution and defense are aleatory and do not actually arise or become an obligation until the party who is claiming such rights is

0648445.01

-7-

found liable for the underlying claim. In a maritime case that addressed an insurer's obligation to indemnity and duty to defend, the court held that they were not attachable. Robinson v. Shearer & Sons, Inc., 429 F.2d 83, 85 (3rd Cir. 1970). In Robinson, the plaintiff alleged that an insurer's obligation to indemnity and duty to defend was attachable under Rule B(1) of the Supplemental Rules for Certain Admiralty and Maritime Claims. Id. The Robinson court first determined that the obligation to indemnify is not a "debt" as applicable to the rule. The court explained that "historically attachable property fell within one of two categories. It was either tangible property of a defendant capable of being seized and sold in satisfaction of a judgment or it was a contractual liability owing from the garnishee to the defendant which, at the time of attachment, could have supported a present or future action by the defendant against the garnishee." Id. The court held that because an indemnification agreement is aleatory and thus may never become absolute, it concluded that it is not a debt subject to federal attachment prior to the actual determination that the insured is liable and the policy terms cover his liability. Id. at 85. Similarly if this court determines that Mitsui is entitled to indemnity and attorney's fees, at that time the issues of indemnity and attorney's fees would become an obligation. Of course as a matter of judicial economy and to avoid having duplicative proceedings with regard to the same issues it has become

0648445.01

-8-

common for courts to address both issues at the same time. However, in no way could Mitsui have waived the claim for attorney fees by not placing into evidence the exact amount of fees it is seeking. This court should allow additional evidence at the time of deciding the issues on the attorney's fees by way of Affidavit and/or Motion.

C. The Indemnity Agreement is Valid Under Pennsylvania Law.

The test used to determine the enforceability of an indemnity clause is as follows:

> First, the clause must not contravene public policy. Second, the contract must relate solely to the private affairs of contracting parties and not include a matter of public interest. Third, each party must be a free bargaining agent. In addition, an . . . indemnity clause will still not be enforced unless it is clear that the beneficiary of the clause is being relieved of liability only for his/her own acts of negligence. The clause must be construed strictly and the contract must state the intention of the parties with the greatest particularity. Furthermore, any ambiguity must be construed against the party seeking immunity, and that party also has the burden of proving each of the prerequisites of enforcement.

Valhal Corp. v. Sullivan Assoc., Inc., 44 F.3d 195, 202 (3d Cir. 1995) citing Topp Copy Products, Inc. v. Singletary, 626 A.2d 98 (Pa. 1993). Generally, indemnity provisions such as the one involved herein are disfavored, and therefore must meet the above requirements in order to be enforceable. See Valhal Corp. at 202.

0648445.01

-9-

Here, it is unlikely that the clause contravenes public policy. "[I]ndemnity provisions of this type . . . are frequently relied upon by the parties as a means of allocating the responsibility of obtaining insurance. Thus, they purportedly serve a reasonable business purpose." Egan v. Atlantic Richfield Co., 566 A.2d 1249, 1252 (Pa.Super. 1989). Also, the Contract relates to the private affairs of the parties. Further, the Contract likely does not include a matter of public interest.

Insofar as the third requirement is concerned, "[c]ontracts of adhesion involve agreements between parties who are not of equal bargaining power." Egan at 1252. "The commercial or individual status of the parties is significant in determining whether the court will find a contract of adhesion." Id. citing Bank Towers Communications, Ltd. v. Home Ins. Co., 590 F.Supp. 1038 (E.D. Pa. 1984). "Another factor of significance is awareness on the part of the assertedly weaker party of the contract's specific terms." Id. citing Bishop v. Washington, 480 A.2d 1088 (Pa.Super. 1984).

However, "[m]ere unequal bargaining power between contracting parties does not render their contracts unconscionable." Stanley A. Klopp, Inc. v. John Deere Co., 510 F.Supp. 807, 811 (E.D.Pa. 1981) citing Phillips Machinery Co. v. LeBlond, Inc., 494 F.Supp. 318 (N.D.Okla. 1980). "Nor is negotiation necessary between parties." Id. In determining whether a clause in a contract is

0648445.01

unconscionable, "[t]he basic test is whether, in the light of the general commercial background and the commercial needs of the particular trade or case, the clauses involved are so one-sided as to be unconscionable under the circumstances existing at the time of the making of the contract." Metalized Ceramics for Electronics, Inc. v. National Ammonia Co., 663 A.2d 762, 764 (Pa.Super. 1995). "[A] contract or a clause in a contract is to be considered unconscionable if there is 'an absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other." Id. at 764-5 (citations omitted). "A number of courts have recognized that, although it is possible, rarely will a commercial contract or term be found to be unconscionable." Stanley A. Klopp, Inc. at 810. In this case, Kellaway's COO has testified as to the mutual benefits of the UIIA on carriers and truckers.

III. CONCLUSION

Based on the unchallenged evidence of record and unequivocal statement of the law, Mitsui is entitled to judgment in its favor acknowledging that Kellaway had a duty to defend and indemnify which it failed to acknowledge.

0648445.01

Additionally, it is within the sound discretion of the trial court to accept evidence of the amount of attorney fees once a judgment has been entered.

Respectfully submitted,

RAWLE & HENDERSON LLP

By: _/s/ Ann-Michele G. Higgins_

Ann-Michele G. Higgins
Charles W. McCammon
Attorneys for defendant/third party plaintiff
Mitsui O.S.K. Lines, Ltd.
The Widener Building
One South Penn Square
Philadelphia, PA 19107
(215) 575-4000

0648445.01

## CERTIFICATE OF SERVICE

I hereby certify that on this date, a copy of the foregoing Trial Brief Regarding the Issue of Attorney's Fees on behalf of defendant Mitsui O.S.K. Lines Ltd. has been served on all counsel of record via U.S. First Class Mail, postage pre-paid to:

George R. Zacharkow, Esquire
Mattioni, Ltd.
399 Market Street
Second Floor
Philadelphia, PA 19106-2138

Patrick J. Keenan, Esquire
The Curtis Center, Suite 1150
Independence Square West
Philadelphia, PA 19106

William E. Ecenbarger, Jr., Esquire
Palmer, Biezup and Henderson
956 Public Ledger building
620 Chestnut Street
Philadelphia, PA 19106

Carl H. Delacato, Jr., Esquire
Frederick E. Blakelock, Esquire
Hecker, Brown, Sherry & Johnson
1700 Two Logan Square
18th & Arch Streets
Philadelphia, PA 19103

Charles W. McCammon, Esquire
Ann-Michele G. Higgins, Esquire

Date: April 11, 2002