ORIGINAL

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA
------------------------------------------------------------------x
PHILLIPS-VAN HEUSEN CORP.,

                              Plaintiff,

    - against -

J.V.E. CO., INC.,

                              Defendant,

    - and -

MITSUI O.S.K. LINES LTD.; DAMPSKIBSSELSKABET AF 1912 AKTIESELSKAB and AKTIESELSKABET DAMPSKIBSSELSKABET SVENDBORG,

        Defendants/Third Party Plaintiffs,

    - against -

KELLAWAY TRANSPORTATION, INC.; KELLAWAY INTERMODAL & DISTRIBUTION SYSTEMS, KELLAWAY INTERMODAL SERVICES, INC. and KELLAWAY TERMINAL SERVICES, INC.,

        Third Party Defendants.
------------------------------------------------------------------x

Civil Action No.: 1: CV-00-0665
(Hon. Sylvia H. Rambo)

FILED
HARRISBURG, PA
APR 11 2002
MARY E. D'ANDREA, CLERK
Per _____

DAADS' (t/a MAERSK LINE) MEMORANDUM OF

LAW ON ENTITLEMENT TO AN AWARD OF ATTORNEYS' FEES

PBH: 145518.1

Defendant and Third Party Plaintiff Dampskibsselskabet AF 1912 Aktieselskab and Aktieselskabet Dampskibsselskabet Svendborg t/a "Maersk Line," by and through its attorneys, Palmer Biezup & Henderson LLP, hereby submits the following Memorandum of Law pursuant to the instructions of the Court regarding Maersk Line's entitlement to an award of legal costs, including attorneys' fees, as part of its indemnity from Kellaway Transportation, Inc.; Kellaway Intermodal & Distribution Systems; Kellaway Intermodal Services, Inc. and Kellaway Terminal Services, Inc. (hereinafter collectively referred to as "Kellaway"), and, if required by Kellaway or the Court, for a post-trial hearing to establish the quantum of said costs recoverable by Maersk Line.

Maersk Line's entitlement to attorneys fees springs from two separate sources: (1) contractually, based upon the Uniform Intermodal Interchange and Facilities Access Agreement ("UIIA") in effect between Kellaway and Maersk Line in June of 1999; and (2) as implied by law under the applicable Third Circuit precedence establishing that an indemnitee whose only liability stems from the negligence of its agent is entitled to recover from that agent the legal costs, including attorneys' fees, of defending a claim brought by the injured party.

Under the UIIA, Maersk Line is entitled both to its attorneys' fees incurred in defending the claim of Phillips-Van Heusen Corp. (hereinafter "PVH" or "Plaintiff"), as well as its attorneys' fees incurred in enforcing the UIIA against Kellaway. The non-contractual indemnity for attorneys' fees implied at law provides only for the recovery of attorneys' fees incurred in defending against the claim of PVH, not for fees incurred in pursuing indemnity from Kellaway. However, since the UIIA controls, Maersk Line is entitled to recover both categories of attorneys' fees.

I.      **Attorneys' Fees Under the UIIA**

Under the terms of the governing UIIA, Maersk Line is entitled to recover its attorneys' fees incurred in defending against the claim of PVH, as well as its attorneys' fees incurred in enforcing the provisions of the UIIA against Kellaway. Part III, Section 7 of the UIIA is entitled "Liability, Indemnity, and Insurance". Part III, Section 7(d) provides:

> Indemnity: Motor Carrier [Kellaway Transportation Inc.] agrees to defend, hold harmless, and fully indemnify Provider [Maersk Line], Equipment Owner, and/or Facility Operator, as their interests appear, against any and all loss, damage or liability, including reasonable attorneys fees and costs incurred in the enforcement of this Agreement, suffered by Provider, Equipment Owner and/or Facility Operator arising out of Motor Carrier's negligent or intentional acts or omissions during an Interchange Period and/or presence on Facility Operator's premises"

Maersk Line Exhibit "T"

Part III, Section 7(e) of the UIIA provides:

> Motor Carrier shall provide legal defense to Provider, Equipment Owner and/or Facility Operator for any claim arising against Motor Carrier under Section III.7.d.

Maersk Line Exhibit "T"

Thus, the UIIA provides under Section 7(e) that Kellaway must provide Maersk Line a legal defense for any claim arising under Section 7(d). There is no dispute that Maersk Line tendered its defense of the PVH claim to Kellaway Transportation on July 17, 2000 (Maersk Line Exhibit "N"), and that Kellaway Transportation has not provided Maersk Line a defense to this action. It is also very clear that Section 7(d) provides that Maersk Line is entitled to "reasonable attorneys fees and costs incurred in the enforcement of [the UIIA]..."

In an attempt to avoid its contractual obligations to Maersk Line under the UIIA, Kellaway Transportation argues that at the time the container was stolen from the Kellaway Terminals facility in Harrisburg, Kellaway Transportation had already performed its contractual obligations to Maersk Line, so that the UIIA ceased to govern. Essentially, Kellaway Transportation argues that when it passed custody of the Maersk Line container to its Kellaway Terminals Services Inc. facility in Harrisburg, its contractual obligations to Maersk Line ceased and any recourse must be against Kellaway Terminal Services, who is not a signatory to the UIIA. However, the UIIA itself clearly defines at what point its terms begin to apply and at what point they cease to apply. Also, the UIIA contains several provisions that specifically address the potential loophole through which Kellaway Transportation seeks to escape its liability to Maersk Line.

It is important to note that Maersk Line contracted the transit from the port in Newark, New Jersey to Harrisburg with Kellaway Transportation. Maersk Line retained GPS Transport to then pick up the container at Kellaway's Chambers Hill Road facility and deliver it to the PVH warehouse in Reading, Pennsylvania. Maersk Line did not retain Kellaway Terminal Services; rather, it was Kellaway Transportation who retained Kellaway Terminal Services to store the Maersk Line container until GPS Transport arrived to pick it up for on-carriage to the PVH warehouse. This fact is borne out by all of the documentation surrounding the transit from the port in New Jersey to the Chambers Hill Road facility.

The Maersk Line Work Order was sent to Kellaway Transportation and makes no mention whatsoever of Kellaway Terminals Services. (See Maersk Line Exhibit "C"). The pro-bill which Kellaway used to invoice Maersk Line was in the name of "Kellaway Transportation Inc." (See

Maersk Line Exhibit "P"). Maersk Line only paid one charge for the services and that was to Kellaway Transportation. (See Maersk Line Exhibit "S"). Maersk Line never received an invoice from Kellaway Terminal Services, and Maersk Line never paid any separate charge to either Kellaway entity for terminal storage services. Finally, the commercial lease for the Chambers Hill Road facility was in the name of "Kellaway Transportation". (See Maersk Line Exhibit "G").

In fact, the only documents mentioning Kellaway Terminal Services are documents generated by Kellaway. This is because it was Kellaway Transportation who engaged the services of Kellaway Terminal Services, not Maersk Line. The UIIA makes clear under the "Liability, Indemnity and Insurance" Section of the agreement, Section 7(c) that:

> If the Equipment is interchanged by Motor Carrier [Kellaway Transportation] or is otherwise authorized by Motor Carrier [Kellaway Transportation] to be in the possession of another party [Kellaway Terminal Services], the Motor Carrier [Kellaway Transportation] shall be responsible for the performance of all terms of this Agreement in the same manner as if the Equipment were in the possession of the Motor Carrier, unless the written consent of Provider [Maersk Line] has been obtained.

(Maersk Line Exhibit "T").

Kellaway Transportation did not receive the written consent of Maersk Line to interchange the Maersk Line container to Kellaway Terminal Services. Thus, while the Maersk Line container was in the custody of Kellaway Transportation's agent (Kellaway Terminals), Kellaway Transportation was responsible for the Maersk Line container in the same manner as if it had been in its actual possession. This principle is underscored even further by Section 7(b), which provides: "Independent contractor status: No Party or its agent is the employee or agent of any other Party." (Maersk Line Exhibit "T"). Thus, Kellaway Transportation cannot escape its obligations under the

UIIA by using its affiliated company to perform one of the services it was retained to provide: namely, the storage the Maersk Line container prior to pickup by GPS Transport.

All of the above is even further supported by the fact that the "Interchange Period", as defined by the UIIA, had not come to an end at the time the Maersk Line container was stolen from Kellaway's Harrisburg facility. The "Interchange Period" is defined in Part II, Section I as: "The period, commencing upon Interchange to Motor Carrier [Kellaway Transportation] and concluding upon Interchange to Provider [Maersk Line or its appointed receiver in this case, GPS Transport]." For purposes of the above, "Interchange", as defined in Section H of the Definitions Part is "The transfer of *physical* possession of Equipment under the Agreement." [emphasis supplied]. Thus, it is not enough for Kellaway to carry the Maersk Line container to the destination indicated under the work order; the Interchange Period does not end until physical possession of the Maersk Line container is transferred to the next carrier in the chain–GPS Transport. This never happened, so the Interchange Period had not come to an end.

Therefore, at the time the Maersk Line container was stolen, the provisions of the UIIA governed the rights and obligations between Maersk Line and Kellaway Transportation, and Kellaway Transportation is fully liable for its negligence and the negligence of its affiliate and agent, Kellaway Terminal Services, Inc. Accordingly, in addition to full indemnity for any amount which Maersk Line is found to be liable to PVH, Kellaway is also liable to Maersk Line for all legal costs (including attorneys' fees) incurred by Maersk Line in defending this action against PVH, as well as all legal costs (including attorneys' fees) incurred by Maersk Line in enforcing the provisions of the UIIA against Kellaway.

PBH: 145518.1

6

## II.   Attorneys' Fees Under Common Law

Although it is clear that the UIIA was in force at the time of the theft and requires Kellaway to pay Maersk Line's attorneys fees, if, for some reason, the Court were to find that the UIIA did not govern, Maersk Line is still entitled to recover its legal costs, including attorneys' fees, under applicable common law principles.

It is well-established in this Circuit that passive tort-feasors may recover legal costs from active tort-feasors in indemnity. SPM Corporation v. M/V MING MOON, 22 F.3d 523, 526 (3d Cir. 1994) (citing Fleck v. KDI Sylvan Pools, Inc., 981 F.2d 107, 117 (3d Cir. 1992)); Cooper v. Loper, 923 F.2d 1045, 1051-52 (3rd Cir. 1991); M & O Marine Inc. v. Marquette Co., 730 F.2d 133, 135 (3rd Cir. 1984). Here, Maersk Line is in the same position as the indemnitee was in the M/V MING MOON case and the several cases cited by the Third Circuit in that opinion. Here, the real parties in interest are PVH and Kellaway. Maersk Line is merely interposed between the two real parties in interest, and there is no allegation that Maersk Line did anything wrong–its liability to PVH, if any, arises entirely from its contractual relationship with PVH and was triggered by Kellaway's negligence. See M/V MING MOON 22 F.3d at 526.

Courts have uniformly awarded attorneys' fees as part of the recovery of a passively-negligent party from the actively-negligent party. M/V MING MOON, 22 F.3d at 526; Fleck v. KDI Sylvan Pools, Inc., 981 F.2d at 117; Cooper v. Loper, 923 F.2d at 1051-52; M & O Marine Inc., 730 F.2d at 135; Victoria Sales Corp. v. Emery Air Freight, Inc., 917 F.2d 705, 708 (2nd Cir. 1990); Insurance Co. of North America v. M/V OCEAN LYNX, 901 F.2d 934, 941-42 (11th Cir. 1990); Peter Fabrics, Inc. v. S/S HERMES, 765 F.2d 306, 315-16 (2nd Cir. 1985); Paliaga v. Luckenbach

Steamship Co., 301 F.2d 403, 409 (2d Cir. 1962); In re Complaint of Kreta Shipping, S.A., 2000 W.L. 33249253, *2-3, 2000 A.M.C. 2643 (S.D.N.Y. June 21, 2000). The award of attorneys' fees in an indemnity context is an exception to the "American Rule" that a prevailing party normally is not entitled to recover its attorneys' fees. The reason for the exception in the indemnity context is that the fees are awarded "not as attorney's fees *qua* attorney's fees, but as part of the reasonable expenses incurred in defending against the claim". M/V MING MOON, 22 F.3d at 527-28 (quoting Noritake Co. v. M/V HELLENIC CHAMPION, 627 F.2d 724, n. 5 (5th Cir. 1980)). Thus, "[t]he general rule for attorneys' fees is that 'an indemnitee may recover attorney's fees and costs in defense of the liability indemnified against from the indemnitor.'" M/V MING MOON, 22 F.3d at 528 (quoting Fleck v. KDI Sylvan Pools, Inc., 981 F.2d at 117).

Thus, even if the Court were somehow to find that the UIIA does not govern, Maersk Line would be entitled to recover its legal costs, including attorneys' fees, incurred in defending against PVH's claims.

### III. Post-Trial Hearing On Attorneys' Fees

Maersk Line is entitled to prove the quantum of its legal costs, including attorneys' fees, incurred in defending against Plantiff's claims and in enforcing the indemnity provisions of the UIIA against Kellaway.

At the conclusion of the bench trial of this matter held before the Honorable Sylvia H. Rambo on February 12 and 13, 2002, counsel for Kellaway objected to the subsequent presentation of evidence with regard to the amount of legal costs, including attorneys' fees, to which Maersk Line

is entitled as part of its indemnity claim against Kellaway. As is clear from the Third Circuit's two rulings in the M/V MING MOON matter, a post-trial hearing on the quantum of attorneys' fees in the indemnity context is permissible, if not the standard.

The M/V MING MOON case made two trips to the Third Circuit Court of Appeals. The first trip was after a bench trial in which the District Court Judge found all defendants liable to the Plaintiff, SPM Corp., but found that the COGSA $500.00 package limitation applied to limit the amount of all defendants' liability. The Third Circuit noted that "[t]he District court also ruled that Blue Anchor was entitled to indemnification from Yangming and Maher, including reasonable attorney's fees, but the amount of those fees has yet to be resolved." SPM Corporation v. M/V MING MOON, 965 F.2d 1297, 1300 (3rd Cir. 1992). After affirming the liability and limitation findings in part and reversing in part, the Third Circuit, in its conclusion held: "The order of the district court will be affirmed in part and reversed in part, and the case will be remanded for entry of a corrected judgment and for final resolution of Blue Anchor's indemnity claim, as well as other proceedings that have yet to be concluded." SPM Corporation v. M/V MING MOON, 965 F.2d at 1306. After remand to the District Court where the amount of attorneys' fees was considered, the case made its way for a second time to the Third Circuit, where the Court affirmed the award of $61,556.15 incurred by the indemnitee in defending against the claims of the plaintiff. SPM Corporation v. M/V MING MOON, 22 F.3d at 528-29. Thus, it is clear that the issue of the amount of attorneys' fees in an indemnity context may be addressed at a subsequent hearing after the conclusion of a bench trial and prior to the entry of final judgment.

The same conclusion was reached by the Second Circuit Court of Appeals in <u>McGuire v. Russell Miller, Inc.</u>, 1 F.3d 1306 (2d Cir. 1993):

> "This Circuit has never decided what procedure a district judge should follow in deciding a contractual claim for attorneys' fees. Counsel for both sides agreed at oral argument that the common practice in the district courts of this Circuit is for the judge to determine the amount of attorneys' fees owned pursuant to an indemnification agreement after the liability for such fees is decided at a trial, whether bench or jury. [citations omitted]. Following common practice, today we make law out of what was previously common sense: when a contract provides for an award of attorneys' fees, the jury is to decide at trial whether a party may recover such fees; if the jury decides that a party may recover attorneys' fees, then the judge is to determine a reasonable amount of fees."

<u>McGuire v. Russell Miller, Inc.</u>, 1 F.3d 1306, 1313 (2d Cir. 1993).

All evidence related to Maersk Line's entitlement to attorneys' fees has been submitted to the Court: the pertinent UIIA agreement and the case law that was cited in Maersk Line's pre-trial Proposed Findings of Fact and Conclusions of Law. Once the Court has made a determination with regard to whether Maersk Line is entitled to an award of attorneys' fees (i.e. liability), then a hearing can be scheduled for a determination as to the quantum of fees (i.e. damages). This clearly makes sense that counsel were still incurring fees during the trial and continued to incur fees in preparing post-trial findings of fact and conclusions of law.

Clearly Maersk Line may put forth its evidence of the quantum of legal costs, including attorneys' fees, incurred in both the defense of PVH's claims and in the prosecution of its indemnity claim against Kellaway–it should be noted that the costs incurred by Maersk Line in bringing the instant motion are part of the latter category. Maersk Line can submit evidence of its legal costs by the affidavit of counsel, or, alternatively, if Kellaway requires, Maersk Line can submit this evidence

PBH: 145518.1

10

at a hearing before the Court. Kellaway can show no reason why it would be prejudiced by a post-trial submission pertaining to the appropriate quantum of attorneys' fees to be awarded Maersk Line. Whether submitted by affidavit or at a hearing before the Court, Kellaway will have ample opportunity to object to any category or quantum of fees included in the final amount.

## CONCLUSION

For the reasons stated above, judgment should be entered against Kellaway and if favor of Maersk Line, awarding Maersk Line its legal costs, including reasonable attorneys' fees, incurred in defending against PVH's claims and in enforcing the indemnity provision of the UIIA against Kellaway. A date for the submission of an attorney affidavit in support of Maersk Line's legal costs should be scheduled, or, if required by Kellaway, a hearing date should be scheduled for the presentation of such evidence before the Court.

Dated: April 11, 2002
       Philadelphia, Pennsylvania

                Respectfully Submitted,

                PALMER BIEZUP & HENDERSON LLP

                By: _____
                    Richard Q. Whelan (ID # 35688)
                    William E. Ecenbarger, Jr.
                    Attorneys for Defendant and Third
                    Party Plaintiff DAADS (t/a Maersk Line)
                    620 Chestnut Street, 956 Public Ledger Building
                    Philadelphia, PA 19106-3409 (215) 625-9900

PBH: 145518.1

## CERTIFICATE OF SERVICE

The undersigned counsel hereby certifies that service of a true and correct copies of Defendant/Third-Party Plaintiff DAADS' (t/a Maersk Line) Memorandum of Law On Entitlement To An Award of Attorneys' Fees, Second Amended Findings of Fact and Conclusions of Law and Post-Trial Brief was made to the below-listed counsel on April 11, 2002 via Hand Delivery.

George R. Zacharkow, Esquire
Mattioni Ltd.
399 Market Street, 2nd Floor
Philadelphia, PA 19106

Carl H. Delacato, Esquire
Hecker, Brown, Sherry & Johnson
1700 Two Logan Square
18th & Arch Streets
Philadelphia, PA 19103

Ann-Michele G. Higgins, Esquire
Rawle & Henderson LLP
The Widener Building
One South Penn Square
Philadelphia, PA 19107

Patrick J. Keenan, Esquire
Duffy & Keenan
The Curtis Center, Suite 1150
Independence Square West
Philadelphia, PA 19106

PALMER BIEZUP & HENDERSON LLP

By: _____
William E. Ecenbarger, Jr.
Attorneys for DAADS t/a Maersk Line
620 Chestnut Street
956 Public Ledger Building
Philadelphia, PA 19106-3409
(215) 625-9900