IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| PHILLIPS-VAN HEUSEN CORP., <br>     Plaintiff, <br> vs. <br><br> MITSUI O.S.K. LINES LTD., <br>     Defendant/Third-Party Plaintiff, <br> v. <br> KELLAWAY INTERMODAL & DISTRIBUTION SYSTEMS, INC., <br>     Third-Party Defendant. | CIVIL ACTION NO.: 3:CV00-0665 |

FILED
HARRISBURG, PA
FEB 1 1 2002
MARY E. D'ANDREA, CLERK
Per _____ Deputy Clerk

## PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW OF THIRD-PARTY DEFENDANT, KELLAWAY

Third-party defendant, Kellaway Intermodel & Distribution Systems, Inc. ("Kellaway"), respectfully requests that this Honorable Court enter the following findings of facts and conclusions of law:

### A. Findings of Facts

Third-Party defendant Kellaway agrees to the following facts with plaintiff:

1. Phillips is a corporation with its principal place of business at Madison Avenue, New York, New York.

2. Phillips is a seller of retail clothing, and has distribution and sales facilities at various locations around the country, including Reading, Pennsylvania. It purchases the clothing from manufacturers around the world, including some in Indonesia and Pakistan.

3. Mitsui is a foreign corporation which operates as a common carrier for hire by ocean and other intermodal forms of conveyance. Mitsui was the carrier of some of the container shipments at issue in this action.

4. Maersk is a foreign corporation which operates as a common carrier for hire by ocean and other intermodal forms of conveyance. Maersk was the carrier of some of the container shipments at issue in this action.

5. Kellaway is a corporation with a principal place of business in Randolph, Massachusetts.

6. Mitsui Container Nos. MOLU 0112686, MOLU 0102585, and MOLU 0004465 were delivered to Mitsui for loading aboard an ocean carrier. No exceptions were taken with respect to the containers, as the Mitsui security seals were found to be in place on the doors.

7. On May 16, 1999, Mitsui issued Bill of Lading No. 460156264, Bill of Lading No. 460155893, and Bill of Lading No. 460156258, for three container shipments that it received from Busana Rama. These were Through Bills of Lading, indicating that Mitsui agreed to transport the container shipments from Indonesia to the United States, and deliver them to Phillips at Reading, Pennsylvania.

8. Mitsui Bill of Lading No. 460156264 acknowledged receipt of Container No. MOLU 0112686, bearing Mitsui Seal No. M 577397.

9. Mitsui Bill of Lading No. 460155893 acknowledged receipt of Container No. MOLU 0102585, bearing Mitsui Seal No. M 577398.

10. Mitsui Bill of Lading No. 460156258 acknowledged receipt of Container No. MOLU 0004465, bearing Mitsui Seal No. M 577396.

11. On June 15, 1999, Kellaway's truck drivers picked up Container Nos. MOLU 0112686, MOLU 0102585, and MOLU 0004465 from the terminal at Kearny, New Jersey and transported them to a container yard operated by Kellaway at 4390 Chambers Hill Road, Harrisburg, Pennsylvania.

12. On June 15, 1999, Kellaway issued an Equipment Interchange Receipt and Safety Inspection Report to Mitsui for each of the three Containers, Nos. MOLU 0112686, MOLU 0102585, and MOLU 0004465.

13. Maersk Container No. GSTU 284867-6 was delivered to Maersk for loading aboard an ocean carrier. No exceptions were taken with respect to the container, as the Maersk security seal was found to be in place on the doors.

14. On May 18, 1999, Maersk issued Bill of Lading No. MAEUYCGJ 05408 for a container shipment that it received and agreed to transport from Pakistan to the United States, and deliver to Phillips at Reading, Pennsylvania.

15. Maersk Bill of Lading No. MAEUYCGJ 05408 acknowledged receipt of Container No. GSTU 2848676, bearing Maersk Seal No. 0110356.

16. On June 17, 1999, Kellaway's truck driver picked up Container No. GSTU2848676 from the terminal at Newark, New Jersey and transported it to a container yard operated by Kellaway at 4390 Chambers Hill Road, Harrisburg, Pennsylvania.

17. On June 17, 1999, Kellaway issued an Equipment Interchange Receipt and Safety Inspection Report to Maersk for Container No. GSTU 2848676.

18. Mitsui Container Nos. MOLU 0112686, MOLU 0102585, and MOLU 0004465 were released from bond by U.S. Customs on June 16, 1999 and released by the steamship on June 17, 1999, and Maersk Container No. GSTU2848676 was released from bond by U.S. Customs and released by the steamship on June 18, 1999.

19. At some point after 6:00 p.m. on June 18, 1999, Container Nos. GSTU2848676, MOLU 0112686, and MOLU 0102585 were stolen from the container yard operated by Kellaway at 4390 Chambers Hill Road, Harrisburg, Pennsylvania.

20. The three stolen containers allegedly contained clothing owned by plaintiff, Phillips-Van Heusen Corporation ("PVH").

21. Plaintiff contracted with defendant Maersk to transport one of the containers, number GSTU 2848676, from overseas to PVH's warehouse in Reading, Pennsylvania.

22. PVH contracted with defendant Mitsui to transport two of the containers, numbers MOLU 11268 and MOLU 102585, from overseas to the same location.

23. On June 15, 1999, Maersk issued a work order to Kellaway Transportation to transport container number GSTU 2848676 from Newark, New Jersey to a container yard operated by Kellaway at 4390 Chambershill Road, Harrisburg, Pennsylvania.

24. On June 17, 1999, Kellaway picked up the Maersk container and transported it to the Harrisburg container yard.

25. The Maersk container was transported to Kellaway's Harrisburg container yard so that it could pass U.S. Customs, which it did on June 18, 1999.

26. Mitsui issued a work order to Kellaway Transportation on June 9, 1999, in which Kellaway was requested to transport container numbers MOLU 10258 and MOLU 11268 from Kearney, New Jersey to its container yard in Harrisburg, Pennsylvania.

27. As with the Maersk container, the ultimate destination was PVH's warehouse in Reading, Pennsylvania.

28. The Mitsui containers also needed to pass U.S. Customs, which they did on June 16, 1999.

29. Upon delivering the containers to the container yard in Harrisburg, Kellaway issued equipment interchange receipts to Maersk and Mitsui.

30. The equipment interchange receipts limited Kellaway's liability as a warehouseman to $1,000 per container.

31. Kellaway was not responsible for transporting the containers from the container yard to PVH's warehouse in Reading, Pennsylvania.

32. Both Mitsui and Maersk contracted with another trucking firm, GPS Transport, to transport the three containers from the Harrisburg container yard to PVH's warehouse in Reading.

33. Although the containers were available for pick up by GPS, GPS did not attempt to pick up the containers prior to June 20, 1999.

34. Kellaway's container yard in Harrisburg was a U.S. Customs bonded facility.

35. In order to obtain bonding status, Kellaway had to comply with the requirements of the U.S. Customs.

36. The container yard had a perimeter fence with three strands of barbed wire at the top. The gate to the fence was kept locked during non-business hours.

37. Both Mitsui and Maersk were aware of the security at Kellaway's container yard, and Kellaway never represented that security was other than what actually existed.

38. Some time between 6:00 p.m. on June 18, 1999 and June 19, 1999, unknown criminals broke into the container yard by cutting through the security fence. The criminals then broke into tractors parked in the container yard, and they used the tractors to steal the three containers that are the subject of this case.

39. Kellaway is not responsible for the criminal acts of those unknown third-parties.

40. Kellaway provided reasonable security at the container yard, and Kellaway was not contracted or paid to provide any additional security. As such, Kellaway cannot be held liable for the criminal acts of others.

**B.  Conclusions of Law**

1. Under all of the evidence and the applicable law, defendant Kellaway Intermodal & Distribution Systems, Inc. is not liable.

2. Defendants Mitsui and DAADS claim that Kellaway is liable to them under the Uniform Intermodal Interchange Agreement. The agreement provides:

> d.  Indemnity. Motor Carrier agrees to defend, hold harmless, and fully indemnify Provider, Equipment Owner, and/or Facility Owner, as their interests appear, against any and all loss, damage or liability, including reasonable attorneys fees and costs incurred in the enforcement of this Agreement, suffered by Provider, Equipment Owner and/or Facility Operator <u>arising out of Motor Carrier's negligent or intentional acts or omissions during an Interchange Period</u> and/or presence on Facility Operator's premises.

Uniform Intermodal Interchange Agreement, 2/1/96 at III(7)(d) (emphasis added).

3. Under the Uniform Intermodal Interchange Agreement, Kellaway can only be held liable for losses arising out of its negligent or intentional acts during an Interchange Period. An "Interchange Period" is as defined as "[t]he period, commencing upon Interchange to Motor Carrier [i.e., Kellaway] and Concluding upon Interchange to Provider [Mitsui and DAADS]." *See* Uniform Intermodal Interchange Agreement, 2/1/96 at III(7)(d) and II(I).

4. Kellaway issued Equipment Interchange Receipts to Mitsui on June 15, 1999, and an Equipment Interchange Receipt to DAADS on June 17, 1999 for the three stolen containers. Therefore, as of June 15, 1999, the Interchange Period between Kellaway and Mitsui had concluded, and as of June 17, 1999, the Interchange Period between Kellaway and DAADS had concluded. Uniform Intermodal Interchange Agreement, 2/1/96 at II(I). *See also*, Equipment Interchange Receipt and Safety Inspection Report at ¶1.

5. Upon issuance of the Interchange Receipts on June 15, 1999 to Mitsui and on June 17, 1999 to DAADS, Kellaway became a warehouseman. *See* Equipment Interchange Receipt and Safety Inspection Report at ¶1.

6. The Equipment Interchange Receipt issued by Kellaway to Mitsui and DAADS provides as follows:

> The warehouseman [i.e. Kellaway] shall not be liable for any loss, damage or destruction to goods, however caused unless such loss, damage or destruction resulted from the warehouseman's failure to exercise such care in regard to the good as a reasonably careful man would exercise under the circumstances.

Equipment Interchange Receipt and Safety Inspection Report at ¶4.

7. The Equipment Interchange Receipt issued by Kellaway to Mitsui and DAADS further provides the following:

> The warehouseman [i.e. Kellaway] shall not be liable for loss, damage, destruction or delay caused by ... any other causes beyond the control of the warehouseman.

Equipment Interchange Receipt and Safety Inspection Report at ¶4.

8. Under the Uniform Intermodal Interchange Agreement and/or under the Interchange Receipt, Kellaway can only be held liable if it was negligent. *See* Uniform Intermodal Interchange Agreement, 2/1/96 at III(7)(d). *See also*, Equipment Interchange Receipt and Safety Inspection Report at ¶4.

9. In addition to the Equipment Interchange Receipt, the relationship Kellaway had with Mitsui and DAADS is guided by the Pennsylvania common law regarding bailments.

10. Under Pennsylvania law, a "bailment is a delivery of personalty for the accomplishment of some purpose upon a contract, express or implied, that after the purpose has been fulfilled, it shall be redelivered to the person who delivered it, otherwise dealt with according to [its] directions or kept until [it] reclaims it." Buckley v. Exodus Transit & Storage Corp., 744 A.2d 298, 306 (Pa. Super. 1999).

11. A bailor [i.e. Mitsui and DAADS] establishes a case for the value of unreturned bailed property by showing their delivery of goods to the bailee [i.e. Kellaway] and the bailee's failure to redeliver the goods upon the bailor's demand. Moss v. Bailey Sales and Service, Inc., 123 A.2d 425, 426 (Pa. 1956).

12. In order to be relieved from liability, it then becomes the bailee's [i.e. Kellaway's] burden to show that the goods were lost and the manner in which they were lost - i.e., theft. Moss v. Bailey Sales and Service, Inc., 123 A.2d 425, 426-27 (Pa. 1956), *quoting* Schell v. Miller North

Broad Storage Co., 16 A.2d 680, 683-84 (Pa. Super. 1940).

13. Once the bailee [i.e. Kellaway] establishes this, the burden of going forward with evidence to prove that the loss was due to the bailee's negligence is upon the bailor [i.e., Mitsui and DAADS]. Moss v. Bailey Sales and Service, Inc., 123 A.2d 425, 426, 428 (Pa. 1956) (citations omitted).

14. As a bailee, Kellaway was required to exercise ordinary diligence and was responsible for ordinary negligence. Lear, Inc. v. Eddy, 749 A.2d 971, 974 (Pa. Super. 2000).

15. Where it makes sense for a bailee to take any care at all, the care that should be taken will depend upon the circumstances, considering the risks, the precautions available, and the costs of such precautions. Ferrick Excavation v. Senger Trucking, 484 A.2d 744, 750 (Pa. 1984).

16. A warehouseman is only liable for damages for loss of or injury to the goods in its custody caused by its failure to exercise such care in regard to them as a reasonable careful person would exercise under like circumstances, but unless otherwise agreed, it is not liable for damages which could not have been avoided by the exercise of such care. 13 Pa. C.S.A. §7204(a).

17. There is no presumption or inference that Kellaway was negligent arising from the mere fact that the property was stolen while in its possession. Moss v. Bailey Sales and Service, Inc., 123 A.2d 425, 428 (Pa. 1956) (citations omitted).

18. Mitsui and DAADS have also made allegations regarding the security that was provided at Kellaway's facility. Under Pennsylvania law, there is no general duty of a land owner to protect its property against criminal intrusion. Feld v. Merriam, 485 A.2d 742, 747 (Pa. 1984).

19. If a land owner voluntarily offers a program to protect the premises, the land owner must perform the task in a reasonable manner. Feld v. Merriam, 485 A.2d 742, 747 (Pa. 1984).

20. Parties such as Mitsui and DAADS may rely upon a program of protection only within the reasonable expectations of the program, and they may not expect more than is offered. Feld v. Merriam, 485 A.2d 742, 747 (Pa. 1984).

21. A land owner is not and cannot be expected to defeat all criminal intentions. Feld v. Merriam, 485 A.2d 742, 747 (Pa. 1984).

22. Kellaway breached no duty to Mitsui or DAADS, and Kellaway was not negligent.

23. In the alternative, should this Court conclude that Kellaway did not act in a reasonably prudent manner, Kellaway's conduct was not a "substantial contributing factor" to Mitsui and DAADS' damages because the harm would have been sustained even in the absence of Kellaway's conduct. Witner v. Von Hintz, 263 A.2d 889, 894 (Pa. 1970); Ford v. Jeffries, 379 A.2d 111 (Pa. 1977); Majors v. Brodhead Hotel, 205 A.2d 873, 877 (Pa. 1965); Henry v. McCrudden, 575 A.2d 666, 669 (Pa. Commw. 1990), *appeal denied* 585 A.2d 470 (Pa. 1990).

24. Mitsui and DAADS have not and cannot prove that Kellaway's conduct, in relation to the alleged damages, was "so significant and important a cause that [Kellaway] should be legally responsible". Novack v. Jeannette District Memorial Hospital, 600 A.2d 616, 618 (Pa. Super. 1991). Therefore, Mitsui and DAADS cannot recover from Kellaway.

25. Mitsui and DAADS have not and cannot establish by a preponderance of the evidence that the injuries allegedly sustained by them were caused as a result of the negligence of Kellaway and/or that Kellaway's negligence was the proximate cause of their injuries

24. Kellaway exercised ordinary care in this matter, and judgment should be entered in favor of Kellaway.

26. No damages will be presumed. Damages must be proved by legally sufficient evidence and must be shown to have arisen out of a defendant's negligence. Maxwell v. Schafer, 112 A.2d 69, 73 (Pa. 1955).

27. Mitsui and DAADS have the burden of establishing damages by a preponderance of the evidence.

28. The Equipment Interchange Receipt issued by Kellaway to Mitsui and DAADS limits liability as follows:

> The liability of the warehouseman [i.e. Kellaway] as to each container or trailer stored is limited to the actual value of the contents of said container or trailer but not to exceed one hundred times the amount of the daily warehouse/yard storage rate for each such container or trailer stored or ONE THOUSAND ($1000) DOLLARS, whichever is less. In no event shall the liability of the warehouseman [i.e. Kellaway] exceed the actual value of the goods nor include any loss of profit or collateral or consequential damages.

Equipment Interchange Receipt and Safety Inspection Report at ¶3. Therefore, even if this Court concludes that Kellaway is liable to either Mitsui or DAADS, neither Mitsui or DAADS may recover more than $1,000 for the contents in each of the stolen containers.

29. Mitsui and DAADS are not entitled to recover for any economic losses such as lost profits, unexpectedly expended services, or labor costs. Constar, Inc. v. Nat'l. Distribution Centers, Inc., 101 F.Supp.2d 319, 322 (E.D. Pa. 2000) (Holding that the economic loss doctrine "prohibits recovery in tort for economic losses to which the party's entitlement 'flows only from a contract.'" Id. at 322 (citations omitted). "The economic loss doctrine permits recovery in negligence only for damage to property or injury to person." Id.)

30. Damages that are uncertain, contingent or speculative are not recoverable. <u>Weinglass v. Gibson</u>, 155 A. 439, 440 (Pa. 1931).

31. Plaintiff had a duty to mitigate damages, and plaintiff cannot recover for lost profits or other damages that it failed to mitigate. <u>Northeastern Vending Co. v. P.D.O., Inc.</u>, 414 Pa. Super. 200, 204, 606 A.2d 936, 938 (1992).

32. Plaintiff is not entitled to alleged lost profits for the stolen goods.

WHEREFORE, this Honorable Court is respectfully requested to enter judgment in favor of additional defendant, Kellaway Intermodel & Distribution Systems, and against third-party plaintiffs.

Respectfully submitted,
DUFFY & KEENAN

BY: _____
PATRICK J. KEENAN, ESQUIRE
Attorney for Third-Party Defendant
The Curtis Center, Suite 1150
Independence Square West
Philadelphia, Pa. 19106
(215) 238-8700

Date: 2-11-02

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| PHILLIPS-VAN HEUSEN CORP., <br> Plaintiff, <br> vs. <br> MITSUI O.S.K. LINES LTD., <br>    Defendant/Third-Party Plaintiff, <br> v. <br> KELLAWAY INTERMODAL & DISTRIBUTION SYSTEMS, INC., <br>    Third-Party Defendant. | CIVIL ACTION NO.: 3:CV00-0665 |

### CERTIFICATE OF SERVICE

I, PATRICK J. KEENAN, ESQUIRE, do hereby certify that I have served a copy of the attached Proposed Findings of Fact and Conclusions of Law of Third-Party Defendant, Kellaway, by first class mail, on the date indicated below to the following:

Ann-Michele Higgins, Esquire
Charles W. McCammon, Esquire
Rawle & Henderson, LLP
The Widener Building
One South Penn Square
Philadelphia, Pa 19107

Frederick E. Blakelock, Esquire
Carl H. Delacato, Jr., Esquire
Hecker, Brown, Sherry & Johnson
1700 Two Logan Square
18th & Arch Streets
Phila., Pa 19103

George R. Zacharkow, Esquire
Mattioni Ltd.
399 Market Street, 2nd Floor
Philadelphia, Pa 19106

Richard W. Whalen, Esquire
William E. Ecenbarger, Jr., Esquire
Palmer, Biezup and Henderson
956 Public Ledger Building
620 Chestnut Street
Philadelphia, Pa 19106

DUFFY & KEENAN

BY: _____
PATRICK J. KEENAN, ESQUIRE
Attorney for Third-Party Defendant
The Curtis Center, Suite 1150
Independence Square West
Philadelphia, Pa. 19106
(215) 238-8700

Date: _____