IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| PHILIPS-VAN HEUSEN CORP., | : CIVIL ACTION NO. 1:CV-00-0665 |
| Plaintiff | : |
| v. | : |
| MITSUI O.S.K. LINES LTD., et al, | : |
| Defendants | : |



## MEMORANDUM AND ORDER

Before the court are petitions for attorney's fees filed by Defendants and Third-Party Plaintiffs Mitsui O.S.K. Lines, Ltd. ("Mitsui") and Dampskibssekskabet Af 1912 Aktieseskab and Aktieseskabet Dampskibssekskabet Svenborg d/b/a Maersk Line, Inc. ("Maersk").[1] The parties have briefed the issues and presented oral argument. The matter is now ripe for disposition.

I.   **Background**

On February 12 and 13, 2002, the court held a trial in the captioned matter. The suit arose out of the theft of three intermodal containers from a container yard, located in Harrisburg, Pennsylvania and owned by Third-Party Defendant Kellaway Transportation, Inc. ("Kellaway"). Mitsui owned two of the stolen containers. The third container belonged to Maersk. Unknown vandals broke into Kellaway's container yard and absconded with the three containers and their cargo – over 30,000 men's Izod brand shirts manufactured by agents of Plaintiff Philips-Van Heusen Corporation ("PVH"). Maersk and Mitsui had previously

---

[1]Maersk and Mitsui are collectively referred to as "the Ocean Liner Defendants."

issued through bills of lading to PVH, promising to deliver the shirts from their points of origin in Pakistan and Indonesia to PVH's warehouse in Reading, Pennsylvania.

On August 14, 2002, the court issued its findings of facts and conclusions of law. In that document, the court held Mitsui and Maersk liable to PVH for breach of the through bills of lading. To that end, the court held Mitsui liable for $182,990.85 and Maersk for $81,835.39. (Memorandum, Aug. 14, 2002, Concl. of Law at ¶¶ 4 and 6.) Additionally, the court held Kellaway liable for full indemnification to Maersk and Mitsui based on Kellaway's breach of its bailment contract with the Ocean Liner Defendants. (*Id.* at ¶¶ 8 and 10.)

On August 20, 2002, the court issued an order granting the parties leave to file petitions for attorney's fees. On September 4, 2002, Maersk filed a petition seeking $71,572.35 in attorney's fees from Kellaway. On that same date, Mitsui also filed a petition against Kellaway for $66,809.36 in attorney's fees. Both petitions indicated that, at the outset of this litigation, the Ocean Liner Defendants tendered their defenses to Kellaway; but, Kellaway refused to honor the requests. (*See* Maersk Petition at ¶ 4; Mitsui Petition at p. 4.) On September 24, 2002, Kellaway filed its brief in opposition. In that document, Kellaway argued both that there is no basis for requiring it to pay the Ocean Liner Defendants' attorneys' fees and that the fees claimed by counsel are unreasonable.

On October 25, 2002, the court issued an order requiring (1) Kellaway to submit specific objections to the reasonableness of the Ocean Liner Defendants

claimed fees, and (2) the parties to appear for oral argument. On November 19, 2002, the court held oral argument.[2]

### II. Legal Standard: Petition for Attorney's Fees

Under Pennsylvania law, attorney's fees are recoverable for breach of a contract that also allows for recovery of attorney's fees in the event of a breach. *See SNA, Inc. v. Array*, 173 F. Supp.2d 347, 350 (E.D. Pa. 2000).[3] In order to calculate an appropriate attorney's fee, courts employ the "lodestar" method by multiplying a reasonable hourly rate by the number of hours expended on a successful claim. *See Hensely v. Eckerhart*, 461 U.S. 424 (1983); *Lindy Bros. Builders, Inc. v. American Radiator Standard Sanitary Corp.*, 487 F.2d 161, 167-68 (3d Cir. 1973).[4] The party seeking recovery of its attorney's fees bears the burden of demonstrating that the hours billed and the rate employed are both reasonable. *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, 564 (1986).

### III. Discussion

Kellaway contends (1) it is not liable for any attorney's fees that the Ocean Liner Defendants incurred in defending the suit brought against them by

---

[2]Because the matter did not implicate PVH, the court did not require that its counsel appear for the oral argument.

[3]In its findings of fact and conclusions of law, the court held that Pennsylvania law governs this action. (*See* Memorandum, Aug. 14, 2002 at Part II.B.)

[4]This is the standard used under the federal fee-shifting statute, but there is no reason not to use the same standard in a contract action.

3

PVH, and (2) the fees claimed by the Ocean Liner Defendants are unreasonable.[5] Because the court disagrees as to Kellaway's first argument, but agrees, in part, that the requested award is unreasonable, the court will grant the Ocean Liner Defendants a reduced award.

### A.   Availability of Attorney's Fees

In the discussion section of its opinion, the court predicated both its findings of liability and indemnification on its determination that Kellaway rendered a negligent performance. (*See* Memorandum, Aug. 14, 2002 at Parts II.C.) As to PVH's claim against the Ocean Liner Defendants, the court held that because the loss occurred, due to theft while the cargo was in possession of the Ocean Liner Defendants' subcontractor, Kellaway, the Ocean Liner Defendants would only be liable if their subcontractor's performance fell below the standard of care for operators of intermodal container yards. The court then examined Kellaway's performance, holding that it fell below the standard of ordinary negligence.

As to indemnification, the court held that the contract between the Ocean Liner Defendants and Kellaway, the Uniform Intermodal Interchange Agreement ("the UIIA"), required that Kellaway indemnify the Ocean Liner Defendants for the loss that incurred due to Kellaway's negligence. Accordingly, the court ordered Kellaway to indemnify the Ocean Liner Defendants for their liability to PVH under the through bills of lading.

---

[5] Although Kellaway has objected to the number of hours billed to the Ocean Liner Defendants, Kellaway has not objected to the rate that the Ocean Liner Defendants' attorneys applied. The court will not address factors not raised by Kellaway. *See Rode v. Dellarciprete*, 892 F.2d 1177, 1183 (3d Cir. 1990) ("The district court cannot 'decrease a fee award based on factors not raised at all by the adverse party.' " (quoting *Bell v. United Princeton Props., Inc.*, 884 F.2d 713, 720 (3d Cir. 1989))).

4

Kellaway now argues that the court cannot require it to pay attorney's fees based on the UIIA. However, the applicable provision of that document requires not only indemnification, but also the payment of attorney's fees and costs incurred in enforcing the agreement. The applicable provision of the UIIA states:

> Indemnity: Motor Carrier [Kellaway] agrees to defend, hold harmless, and fully indemnify Provider[s] [The Ocean Liner Defendants], Equipment Owner and/or Facility Operator, as their interests appear *against any and all loss*, damage or liability, *including reasonable attorneys' fees* and costs incurred in the enforcement of this Agreement, suffered by Provider, Equipment Owner and/or Facility Operator *arising out of Motor Carrier's negligent or intentional acts or omissions during an Interchange Period* and/or presence on Facility Operator's premises.

(Mitsui Ex. D at ¶ III.B.7.d. (emphasis added).)

Kellaway claims that because Pennsylvania law requires that indemnity clauses be strictly construed against the party seeking indemnification, the UIIA provision should not be read to allow recovery in this case. More specifically, Kellaway contends that the agreement does not explicitly state that Kellaway must indemnify the Ocean Liner Defendants for a breach of contract loss. Therefore, according to Kellaway, attorney's fees are unavailable to the Ocean Liner Defendants pursuant to the UIIA.

In support of their argument, Kellaway cites *Jacobs Constructors v. NPS Energy Services*, 264 F.3d 365 (3d Cir. 2001). In that case, the Pennzoil Company contracted with Jacobs to construct an addition to its oil refinery in western Pennsylvania. Jacobs, in turn, subcontracted with NPS Energy to perform mechanical services on the addition. Under the agreement between Pennzoil and Jacobs, Jacobs agreed to indemnify and defend Pennzoil against all claims arising from personal injury to, or death of, any subcontractor's employees. Under the

5

terms of the subcontract, NPS Energy agreed to similarly indemnify Jacobs for any claims against it arising out of personal injury or wrongful death of NPS Energy's employees. *Id.* at 367. On October 16, 1995, a fire and explosion occurred at the factory. Several individuals, including employees of NPS Energy, either died or suffered serious physical injuries. The employees sued Pennzoil for wrongful death and personal injury. *Id.* Pennzoil then sued Jacobs for indemnification. Jacobs, in turn, filed a declaratory judgment action against NPS Energy, seeking indemnification and a finding that NPS was required to defend Jacobs against Pennzoil's suit pursuant to the terms of the subcontract. *Id.* at 368. The District Court agreed with Jacobs that NPS Energy had a duty to defend it under the terms of the parties' contract. NPS Energy appealed. *Id.*

On appeal, the Third Circuit, applying Pennsylvania law, reversed. *Id.* at 374. The court held that the contract between Jacobs and NPS Energy did not obligate NPS Energy to indemnify Jacobs for contractual claims brought by Pennzoil against Jacobs. In coming to this conclusion, the court required an explicit indication in the subcontract indicating that NPS Energy obligated itself to indemnify Jacobs for contract claims. Under Pennsylvania law, contracts for indemnification must be strictly construed against the party seeking indemnification. *See Perry v. Payne*, 66 A. 553 (1907). Jacobs argued that although Pennzoil's claim against it was contractual, the claim against Pennzoil – which was the predicate for Pennzoil's claim against Jacobs – arose out of claims for personal injury and wrongful death. Thus, Jacobs argued, the indemnification clause in the subcontract indicating that NPS Energy would defend Jacobs against any claim arising out of

6

personal injury, should have been read to require NPS Energy to defend Pennzoil's suit against Jacobs. The court disagreed, stating:

> Absent express language to the contrary, we believe that the phrase "lawsuit or litigation *brought with respect to any such injury, death, loss, or damage*" should be read more narrowly. Rather than covering *any* lawsuit related to a personal injury or death, we believe the phrase extends only to NPS Energy's direct liability to Jacobs. In other words, NPS Energy is liable only for claims brought directly against Jacobs. Therefore, Pennzoil's personal injury claims against Jacobs are too attenuated. NPS Energy simply did not have ample notice of its obligation to defend Jacobs in such suits.

*Id.* at 373 (emphasis in original).

Kellaway argues that because the UIIA's terms do not expressly state that Kellaway would be liable for contractual claims asserted against the Ocean Liner Defendants, the UIIA should be narrowly interpreted to exclude such claims. The court disagrees. In *Jacobs*, the Third Circuit did not center its analysis on the theory of liability, *i.e.* whether the claim sounded in tort or contract. Rather, the court found that NPS could not have foreseen that it would be held liable for Pennzoil's claim, regardless of the theory of liability. For that reason, the court held that the contract did not contemplate indemnification for such a suit. NPS Energy's promise to defend Jacobs against any claims arising out of personal injury could not fairly be read to require them to defend Jacobs against any contractual claims asserted against Jacobs by third parties based on fourth-party claims against the third party; unless of course, the contract had employed language indicating as such.

In this case, it was foreseeable that Kellaway would have to defend the Ocean Liner Defendants from a suit brought by PVH, so long as that suit arose from an allegation that Kellaway's negligence caused the alleged harm. The UIIA required Kellaway to defend the Ocean Liner Defendants from claims arising out of

7

its negligence during the interchange period. Kellaway does not contend that if the claim against the Ocean Liner Defendants had sounded in tort, they would not have had to defend. Instead, Kellaway argues that it could not have expected to be required to defend a claim based in contract because the UIIA does not explicitly state that Kellaway would be forced to defend contract actions. The UIIA, however, does not limit what type of claim Kellaway would have to defend to tort actions. Instead, the UIIA limited Kellaway's indemnification responsibilities to those situations where the suit arose out of its negligence during the interchange period. PVH's claim against the Ocean Liner Defendants arose out of Kellaway's negligent performance during the interchange period. Although the UIIA does not explicitly state that Kellaway would have to defend contract claims against the Ocean Liner Defendants arising out of Kellaway's negligence, a reasonable and strict reading of that document indicates that it would. This is especially true in light of the fact that bailment cases, although essentially contract claims, employ a tort standard – *i.e.* negligence – in determining liability. *See Ferrick Excavating v. Senger Trucking*, 484 A.2d 744, 747-748 (holding that in cases where a benefit is bestowed on both the bailee and the bailor, the bailee will be held liable only upon a showing that he acted negligently).

  Additionally, the UIIA provision requiring indemnification includes attorney's fees in its definition of indemnification. Because the court is satisfied in its holding that the UIIA requires Kellaway to indemnify the Ocean Liner Defendants for their loss that occurred as a result of Kellaway's negligence, the court is likewise confident that Kellaway had a duty to defend the Ocean Liner Defendants against PVH's claim. The UIIA calls for the payment of attorney's fees

8

in cases, like the instant one, where the claim against the third-party defendant arises out that party's negligence and the defense of the action has been tendered to the allegedly negligent party, but refused. Therefore, Kellaway must pay the Ocean Liner Defendants attorneys' fees "incurred in the enforcement of [the UIIA's indemnification provision.]" (Mitsui Ex. B at Part III.B.7.d.)

### B. The Reasonableness of the Attorney's Fees

#### 1. Maersk's Petition

Kellaway objects to the 5.7 hours that Maersk's counsel spent researching Kellaway's address and the rules for service of process. This research took place between December 27, 2000 and April 4, 2001. On March 6, 2001, however, the parties, including Kellaway's counsel, held a second telephone conference regarding service and entry of appearance. At that time, Maersk could have obtained from Kellaway its address for service in Pennsylvania and Massachusetts. Thus, the research on April 3 and 4, 2001 seems unnecessary and will be excluded.

Kellaway argues that 4.7 hours spent preparing a third-party complaint against J.V.E. Company was unnecessary as Kellaway never proffered that the landlord was the responsible party instead of Kellaway. Furthermore, Maersk voluntarily dismissed J.V.E. The court, therefore, sustains Kellaway's objections, and these hours will be excluded.

Kellaway objects to the 10.2 hours spent related to Maersk's expert who did not testify at trial. This time does not appear inordinate. An expert need not testify at trial. If the expert was of aid in the defense of the case, the time spent with him appears reasonable. At oral argument, counsel for Maersk indicated that

the expert assisted in the preparation of certain aspects of the trial. Moreover, the expert was present at trial and prepared, if necessary, to testify. The court, therefore, will not exclude these hours.

Kellaway also objects to the time Maersk's counsel billed for drafting summaries of depositions. The court finds that the summary of a deposition, prepared by counsel for the client, should not take more than one hour; especially given that none of these depositions lasted more than one day. On October 3, 2001 and November 21, 2001, Maersk's counsel spent 1.7 and 1.8 hours drafting summaries of depositions which lasted eight hours. The court, therefore, will reduce the time billed for these tasks by .7 and .8 hours respectively.

On September 7, 2001, Maersk's counsel combined several different chores, including a deposition summary, for 3.2 hours billed to its client. Kellaway objects to this billing. Although aggregation of work on a particular day for various tasks may not be best method of listing hours expended, the court will uphold the aggregate amount if there is a reasonable basis for finding that the aggregate was not excessive. *Rode*, 892 at 1191. Because the court finds that the 3.2 hours billed is not excessive for the aggregation of the tasks performed on September 7, 2001, the court will not reduce this number.

Kellaway also objects to the 32 hours Maersk spent preparing the pretrial memorandum, exhibit list, and preliminary findings of fact and conclusions of law. The Maersk exhibit list contained twenty-one exhibits. The twelve-page pretrial memorandum contained the following: a three-page statement of facts; a two-page witness list; one-half page of desired stipulations; and a one page summary of legal issues. The remaining pages contained either single paragraphs or

one line addressing the information required by the court's pretrial memorandum outline. The preparation of this document could be completed in a maximum of five hours. It is noted that on January 4, 2002, there is a notation that the pretrial memorandum was edited for 2.8 hours. However, there is a later notation, that same day, of 3.7 hours of continued preparation of the pretrial memorandum. Thus, there appears to be a total of 8.9 hours, not counting the 2.8 hours on January 4, 2002, spent exclusively on preparing and editing the pretrial memorandum. It is excessive to spend almost nine hours preparing such a simple document. The court, therefore, will exclude five hours.

The work on the findings of fact and conclusions of law is often mixed in with other work so it becomes difficult to determine the reasonableness of the time spent on their preparation. The total mixed time appears to be 12.3 hours. Some of this mixed work included research on trial issues. The court is not inclined to find these combined hours unreasonable.

### 2. Mitsui's Petition

As to Mitsui's petition, Kellaway argues that Mitsui billed excessive time for attending depositions and the pretrial conference. In support of this proposition, Kellaway points to the difference in time that Maersk and Mitsui billed for taking the same depositions. The only explanation for the differences is that Mitsui's counsel billed the client for her travel time. Thus, Mitsui will be held to the lower figure turned in by Maersk. This holding will also apply to attendance at the pretrial conference and the settlement conference.

Kellaway also objects to the hours that Mitsui's counsel spent preparing Mitsui's pretrial memorandum, exhibit list and findings of fact and

conclusions of law. Mitsui's counsel intermingles the billings for these tasks with billings as to other tasks. The court cannot separate the issues to determine the reasonable hours expended on each task. Overall, however, the hours do not appear to be excessive. The court, therefore, will not reduce these hours.

IV. **Conclusion**

In all other respects, the court will deny Kellaway's objections. The following is a calculation of the *reductions* to be made to each fee petition.

| | | | |
|---|---|---|---|
| Maersk | Service of process | .9 x $130 | $ 117.00 |
| | J.V.E. issue | 4.7 x $215 | $1,010.50 |
| | Summaries of depositions | 1.5 x $145 | $ 217.50 |
| | Pretrial memorandum | 5.0 x $145 | $  725.00 |
| | Total Deduction from Petition: | | $2,070.00 |
| | | | |
| Mitsui | Depositions | .9 x $120<br>2.9 X $165<br>1.7 X $175 | $ 108.00<br>$ 478.50<br>$ 297.50 |
| | Pretrial conference | 2.2 x $175 | $ 385.00 |
| | Settlement conference | 4.7 x $175 | $  822.50 |
| | Total Deduction from Petition: | | $2,091.50 |

V. **Order**

Accordingly, **IT IS HEREBY ORDERED THAT** the following award of fees and costs are made in the captioned action:

(1) In favor of Mitsui O.S.K. Lines Ltd. ("Mitsui") and against Kellaway Transportation, Inc. in the sum of $64,717.86.

(2) In favor of Dampskibssekskabet Af 1912 Aktieseskab and Aktieseskabet Dampskibssekskabet Svenborg d/b/a Maersk Line, Inc. in the sum of $69,502.35.

(3) The Clerk of Court shall enter judgment for the award of fees above. Additionally, the Clerk of Court is directed to enter judgment in accordance with the court's order of August 14, 2002 and to close the case file.

SYLVIA H. RAMBO
United States District Judge

Dated: December 10, 2002.